# STATE, by STATE ROAD COMMISSION, et al. v. DISTRICT COURT, FOURTH JUDICIAL DIST. IN AND FOR UTAH COUNTY et al.

No. 5897.   Decided October 15, 1937.   (78 P. [2d] 502.)

Rehearing Denied April 13, 1938.

386

*Joseph Chez*, Atty Gen., and *John D. Rice*, Deputy Atty. Gen., for plaintiffs.

*George W. Worthen*, of Provo, for defendants.

HOYT, District Judge.

In this case the plaintiffs have applied for a writ of prohibition to prohibit the defendants from further proceeding with the trial of an action pending in the district court of Utah county, in which the defendants J. P. Gourley, Bessie Gourley, Charles A. Smith, Rachel Daniels, and Christian P. Andreasen, administrator of the estate of Kate Andreasen, deceased, are plaintiffs, and the State Road Commission of Utah and L. A. Young et al., doing business as L. A. Young Construction Company, are defendants. The action filed in the district court was brought to enjoin the defendants therein, State Road Commission and L. A. Young et al., from constructing a viaduct along a portion of Center street in Provo City until the plaintiffs as abutting owners have been compensated for damages to their properties by reason of such construction, or until the defendant Road Commission shall have secured the right to proceed under an order of the district court in eminent domain proceedings. The plaintiffs in that action, J. P. Gourley et al., are owners of lots abutting upon Center street on the north side of the

section of the street where the viaduct is to be constructed. The complaint in the injunction suit, a copy of which is attached to the application for writ of prohibition herein, sets out among other things: That Center street is an improved street in the city of Provo, 116¼ feet wide; that the State Road Commission has determined to construct a viaduct over railroad tracks which cross said street between the Daniels property and the Andreasen property, and has let a contract for such construction to the defendant L. A. Young Construction Company; that the plans and specifications call for a viaduct 38 feet wide with a maximum height of 30 feet above the present grade of Center street; that this construction will deprive the plaintiffs of their present convenient access to their property, will darken and dampen the street in front of plaintiff's properties; will deprive plaintiffs of their easement of light, air, and view; will cause the grade of the street to be raised in front of their properties; and will prevent continuous travel on Center street past the properties of the plaintiffs, except over the proposed viaduct. It is also alleged that the interurban railway tracks now located in the middle of the street will be moved 22.2 feet north to a line in close proximity to plaintiffs' properties. The complaint further alleges that the threatened acts of the defendants, if not enjoined by the court, will constitute a taking and damaging of plaintiffs' properties; that the defendant Road Commission has not instituted any condemnation proceedings; that if such construction is proceeded with the plaintiffs will have no remedy at law; that the Revised Statutes of Utah provide that the Road Commission may be sued only on written contracts made by it or under its authority, and unless an injunction is issued the plaintiffs will have no remedy and will suffer irreparable injury.

The defendant Road Commission was served with summons and complaint, and it thereafter filed in the district court a motion to quash the proceedings upon the ground (1) that the court had no jurisdiction over the road com-

mission; (2) that the commission may not be sued except upon a written contract.

This motion was denied by the district court, and the present application for writ of prohibition was then filed in this court and an alternative writ of prohibition was issued. The defendants herein have appeared and filed a motion to quash and a demurrer to this writ and the application and affidavit therefor.

The Attorney General, on behalf of the State and State Road Commission, plaintiffs herein, asserts that the injunction suit pending in the district court of Utah county is in reality a suit against the State of Utah, that the State has not consented to be sued in such a case, and that further proceedings in the suit should therefore be prohibited by this court. Counsel for defendants argue to the contrary, that the injunction suit is not a suit against the State.

It is to be noted that in the injunction suit the individual members of the State Road Commission are not named as defendants, and that the service of summons was made upon the commission by service upon one member.

The State Road Commission is an agency of the State. It is clothed with certain powers in the nature of corporate powers, but cannot be considered to be a corporation. It may sue in its own name, and section 36-2-1, R. S. Utah 1933, as amended by Laws of Utah 1935, c. 35, provides that it may be sued only on written contracts. Being an unincorporated agency of the State, a suit against it is a suit against the State. The State cannot be sued unless it has given its consent or has waived its immunity. *Wilkinson* v. *State*, 42 Utah 483, 134 P. 626, 631; *Campbell Building Co.* v. *State Road Commission*, .. Utah ..., 70 P. 2d 857. Defendants do not argue in their briefs that consent has been given by the State or that there has been any waiver of the State's immunity from suit. Their argument is that the injunction suit is not against the State. We cannot agree with this argument in so far as the Road Commission as such is concerned. It is an agency of the

State, and a suit against it is a suit against the State. *Campbell Building Co.* v. *State Road Commission*, supra. In so far, however, as the defendant contractor is concerned, a different question is presented. Also, if the individual members of the Road Commission are personally made parties defendant in the injunction suit the case will be different than if prosecuted against the Road Commission as a body.

Can the injunction suit be maintained against the contractor—or against the individual members of the Road Commission—where the effect of a restraining order, if issued, will be to coerce the State into paying defendants damages, or to temporarily or permanently prevent the State from carrying out the proposed highway improvement?

The State unquestionably has the right to take or damage private property when necessary for public use. There are, however, conditions attached to this right. Article 1, § 22 of the State Constitution provides that private property shall not be taken or damaged for public use without just compensation. The State and Federal Constitutions, each forbid the State to deprive a person of his property without due process of law. Const. Utah art. 1, § 7; Const. U. S. Amend. 14 Chapter 61, of title 104, R. S. Utah 1933, sets forth the procedure by which the right of eminent domain may be exercised in this State. The process required by that chapter, where property is to be taken for public use, is that a proceeding must be instituted in the district court of the county where the property is situated; that a verified complaint must be filed setting forth the name of the commission or person in charge of the public use for which the property is sought, the names of the owners of the property if known, a statement of the right of the plaintiff, a description of the property, etc. It is provided that all persons having or claiming an interest in any of the property described or in the damages for the taking thereof, though not named, may appear, plead, and defend 104-61-8. The court or judge is given the power to

determine the necessity of the taking and to hear and determine all adverse and conflicting claims to the property sought to be condemned, and to the damages therefor. The plaintiff, by a summary proceeding, may obtain an order of the court permitting occupation of the premises pending trial of the action. It is further provided, section 104-61-11, that "the court, jury or referee must hear such legal evidence as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess * * * the value of the property sought to be condemned * * * and of each and every separate estate or interest therein; and * * * if the property, though no part thereof is taken, will be damaged by the construction of the proposed improvement, the amount of such damages"; also, that "as far as practicable compensation must be assessed for each source of damages separately." It is to be noted that this procedure provided for the exercise of the right of eminent domain differs from that adopted by many of the states, in that the landowner is given the right to have his damages assessed by a court or jury, whereas in many of the states such damages are assessed by a board of arbiters.

By the provisions of section 36-2-6, R. S. Utah 1933, as amended by chapter 28, Laws of Utah 1933, the State Road Commission is authorized to secure rights of way and other property for state roads:

"The county commissioners of the several counties and the state road commission are authorized to secure rights of way for state roads and other property to be used in any manner in connection with construction, maintenance and/or operation of state roads, as provided in chapter 61, title 104."

This statute has been construed to give the State Road Commission power to acquire rights of way for state roads by condemnation. *Barnes* v. *Wade*, 90 Utah 1, 58 P. 2d 297.

Let us now consider the effect of the injunction proceeding and whether it may be maintained as against the contractor or against the individual members of the Road

Commission in case they are made parties defendant. The landowners assert that, without any condemnation proceedings or proceedings for assessment of compensation due them, the defendant Road Commission has determined to construct the viaduct and has let a contract to the defendant construction company and notified it to proceed with the work; that unless restrained the construction company will erect the viaduct and the plaintiff landowners will be irreparably damaged and will have no means for enforcing payment of the compensation for their damage which the Constitution guarantees. Suit for an injunction having been filed, can the construction company defend upon the ground that it is acting under contract with and orders from the Road Commission? Or can the members of the Road Commission, if sued as individuals, avoid the injunction by asserting that they are acting as an agency of the State and that the State cannot be sued? Or can the State, in this collateral proceeding, prevent the injunction by asserting that the injunction suit is indirectly against the State, will hamper the State in exercising its governmental functions, and should therefore be prohibited?

If the injunction prayed for by the landowners is granted, it will have the effect of forcing the State to abandon the project or to institute proceedings for assessment of compensation or damages, if any, to which abutting owners may be entitled. The Attorney General argues that the State is the owner of the highway; that it is not seeking to enter upon, take, or appropriate any part of plaintiffs' lands; that it can, without condemnation proceedings, make such improvements upon the highway as the Road Commission in its discretion deems necessary or proper; that the abutting owners, if damaged, can present a claim for compensation to the State Board of Examiners. It is particularly argued that as against landowners whose lands are not taken, but who suffer only consequential injuries, no condemnation proceedings need be instituted.

This court has heretofore said that under the provisions of the Constitution of this state, a party, whose property is about to be specially damaged in any substantial degree for public use, has the same rights and is given the same remedies for the protection of his property from the threatened injury as would be accorded him if █ his property were actually taken and appropriated for such use. In *Stockdale* v. *Rio Grande Western Railway Co.*, 28 Utah 201, 77 P. 849, 852, the plaintiff landowner sued for an injunction to restrain the defendant railway company from operating cars over a spur track which extended from the main line of defendant's railway in the public street into a parcel owned by Anheuser Busch Brewing Association, another defendant; this track being situated in close proximity to plaintiffs' premises upon which there were two dwelling houses. There was evidence that the operation of cars upon that part of the spur track which lay entirely within the premises of the brewing association would materially depreciate the value of plaintiffs' premises. The important question in the case was whether the plaintiffs were entitled to injunctive relief. The defendant insisted that plaintiffs' remedy, if they had one, was by an action at law for damages. The plaintiffs, on the other hand, asserted that the operation of the cars upon the spur track would amount to a continuous trespass upon plaintiffs' property and constituted a taking of their property within the meaning of the provisions of the Constitution which provides that private property shall not be taken or damaged for public use without just compensation. In discussing the case, this court said:

"The authorities do not all agree as to just what will amount to a taking of private property, within the meaning of the provision of the Constitution of the United States, which provision, with an occasional change in the phraseology, has been incorporated into the Constitutions of the several states, namely, 'Private property shall not be taken for public use without just compensation.' Many of the earlier cases adopted the more restricted construction, and held that, to bring a case within the foregoing provision under the Constitu-

tion, there must be an actual physical appropriation of the private property sought to be converted to a public use; but, as stated in 1 Lewis on Eminent Domain (2d Ed.) § 57, 'The law, as to what constitutes a taking, has been undergoing radical changes in the last few years.' And the great weight of the more recent judicial authority, which we believe to be supported by the better reason, and which is more in accord with our ideas of equity and natural justice, holds that any substantial interference with private property which destroys or materially lessens its value, or by which the owner's right to its use and enjoyment is in any substantial degree abridged or destroyed, is, in fact and in law, a taking, in the constitutional sense, to the extent of the damages suffered, even though the title and possession of the owner remain undisturbed."

The court further points out that in order to set at rest this much-vexed question, and at the same time give additional security to private property within the respective commonwealths, several of the states, including Utah, have incorporated in their constitutional provisions a requirement that property shall not be damaged for public use without just compensation. The judgment of the district court restraining the defendant railway company from operating cars or engines on the portion of the spur track located on the premises of the brewing association was affirmed; the court saying:

"Before the appellant railway company can subject the property in question, or any part thereof, to the burdens to which it would be subjected by the running of cars and engines over the switch referred to, it must proceed under the law of eminent domain, as contemplated by the foregoing provision of the Constitution, and as required by the statutes of this state."

In *Dooly Block* v. *Salt Lake Rapid Transit Company,* 9 Utah 31, 33 P. 229, 231, 24 L. R. A. 610, this court also upheld the right of an abutting owner to enjoin the construction and operation of a railway in a public street where eminent domain proceedings had not been resorted to, although the city had granted a franchise to the railway company for construction of the railroad. In that case the plaintiffs admitted that the fee of the street was in the

city under the Townsite Act, but contended that the city held title to the street in trust for street uses proper and subject to the equitable easements of the abutters. This court said:

"When land is settled upon and occupied as a town site, and lots are sold, the right of way over the streets in front of such lots is an appurtenance of necessity, and it requires no special grant in the deed. [Citing cases.] The rights of access, light, and air constitute the principal values of such property, and it must be presumed that when lots are sold the grantees purchase them with a view to the advantages and benefits which attach to them because of these easements. The right of the grantee to their use is precisely the same as his right to the property itself. Such privileges are easements in fee,—incorporeal hereditaments,—and form a part of the estate in the lots. They attach at the time the land is platted and the lots are sold, and will remain a perpetual incumbrance upon the land burdened with them. * * * Equally in both cases the abutting owners are entitled to the use of the street as a means of access to their lots, and for light and air. If the fee is in the city, the rights of the abutter are in the nature of equitable easements in fee; if in the abutter, they are in their nature legal. In either case the abutters have the right to have the street kept open and not obstructed so as to interfere with their easements, and materially diminish the value of their property. When the lots of plaintiffs were sold under the town-site act, above mentioned, it was, in effect, agreed with the grantees that they were entitled to the use of the street as a means of ingress, egress, light, and air. These rights were inducements to purchasers, became a part of the purchase, are appurtenances to the land which cannot be so embarrassed or abridged as to materially interfere with its proper use and enjoyment, and they are, in effect, property of which the owners cannot be deprived without due compensation."

This court having upheld the right of an abutting owner to enjoin the construction or operation of a railway in a public street where condemnation proceedings have not been taken, Will an injunction be proper to restrain a contractor or members of a public commission from constructing a viaduct upon a public street or highway where no condemnation proceedings have been instituted?

The plaintiffs in the injunction suit involved herein assert in their complaint that they have requested the Road Com-

mission to compensate them for their damage or to institute an action for condemnation, and that the commission has refused to pay compensation, and has denied that it is obligated to compensate the plaintiffs. Plaintiffs further allege that if the injunction is denied and the viaduct is built, their properties will be permanently injured and depreciated in value, and that they will have no remedy or means of enforcing assessment or payment of compensation.

The Attorney General on the other hand argues that the plaintiffs have a remedy by presenting their claim to the State Board of Examiners, and that, if dissatisfied by the action of the Board of Examiners, they may appeal to the Legislature.

Does such a right constitute a plain, speedy, and adequate remedy at law so as to make it improper for a court of equity to issue an injunction, the effect of which will be to force the Road Commission to abandon the projects or institute proceedings for condemnation and assessment of compensation?

We are of opinion that where private property is taken or damaged for public use, as is alleged in the complaint in the injunction suit, without any agreement with the owner for compensation, and without any proceedings for assessment in the manner provided by the statute relating to eminent domain, a court of equity may properly take jurisdiction where the only remedy remaining to the landowner is to present a claim to the Board of Examiners.

It must be remembered that we are here dealing with a right expressly reserved to the citizen in the State Constitution:

"Private property shall not be taken or damaged for public use without just compensation." Article 1, § 22.

In Section 26 of the same article, we read:

"The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise."

Again, we are told in section 11 of art. 1:

"All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay."

We think it is clear that the framers of the Constitution did not intend to give the rights granted by section 22, and then leave the citizen powerless to enforce such rights. We hold that this is so whether the injury complained of by the plaintiffs in the injunction suit is considered a "taking" of property, or a "damaging" of property. The framers of the fundamental law, after much debate and careful consideration of the hardship of the old rule which allowed compensation only in the case of a taking of property, wrote into the Constitution a provision by which we think they intended to guarantee to the landowner whose property is damaged just compensation with the same certainty as to the landowner whose property is physically taken.

It is admitted by the Attorney General that injunction would lie if there was here an entry upon and appropriation of private property without the institution of proceedings for assessment of compensation, and that in such case the defendant contractor and the members of the Road Commission, if sued individually, could be enjoined. Also, it is well settled that if entry had already been made upon private property without compensation being agreed upon or proceedings for condemnation instituted, state officers could be proceeded against individually in ejectment and could not shield themselves by the cloak of the State's immunity from suit. *United States* v. *Lee*, 106 U. S. 196, 1 S. Ct. 240, 27 L. Ed. 171; *Tindal* v. *Wesley*, 167 U. S. 204, 17 S. Ct. 770, 42 L. Ed. 137. Why should it be argued that in the one case the landowner can force the State to submit to the usual rules and procedure for assessment of compensation, while in the other case, which is equally covered by a self-executing and mandatory provision of the Constitution, we should say to

the aggrieved property owner: "You must submit your claim for compensation to the state board of examiners and depend upon an appropriation by the legislature—your right is a right with which the courts can have nothing to do"?

Much argument might be devoted to the question whether there is involved in this case a "taking" or a "damaging" of property. Almost countless decisions of courts might be cited on either side of the question. We believe, however, that in incorporating in the Constitution a provision requiring just compensation for property damaged for public use, it was intended to put an end to such controversy and to protect the damaged property owner equally with the property owner whose land was physically entered upon.

We hold that the defendant contractor and the individual members of the Road Commission can be enjoined from doing an act forbidden by the Constitution.

The State Road Commission is, as heretofore stated, an agency of the State, and suit against it is suit against the State. Suit against the State cannot be maintained without its consent, and that consent is not ordinarily implied. It may be argued that by adopting the provisions of section 22 of article 1 of the Constitution, the State has impliedly granted consent to be sued in the case of a taking or damaging of private property for state use without compensation. Such a rule has been declared in at least one jurisdiction, *Chick Springs Water Co.* v. *State Highway Dept.,* 159 S. C. 481, 157 S. E. 842. See, also, *Kentucky State Park Commission* v. *Wilder,* 260 Ky. 190, 84 S. W. 2d 38; *Gledhill* v. *State,* 123 Neb. 726, 243 N. W. 909; *Kentucky State Park Commission* v. *Wilder,* 256 Ky. 313, 76 S. W. 2d 4; *Swift & Co.* v. *Newport News,* 105 Va. 108, 52 S. E. 821, 824, 3 L. R. A., N. S., 404. In the last-mentioned case, the court said:

"It was the design of the amendment to our Constitution under consideration to remove an existing mischief viz., the damaging of private property for public use without just compensation, and a constitutional provision should never be construed as dependent for its

efficacy and operation upon legislative will. 6 A. & E. Ency. L. 913, and authorities cited. So that when the provision of a Constitution, as does ours, no less than the provision in the Constitutions of the States of West Virginia and Illinois, forbids damage to private property, and points out no remedy, and no statute affords one, for the invasion of the right of property thus secured, the provision is self-executing, and the common law, which provides a remedy for every wrong, will furnish the appropriate action for the redress of such grievance. 6 A. & E. Ency. L. 913, and authorities cited in note. And all statutes existing when such a Constitution is adopted, or which might thereafter be passed, inconsistent with its provisions, are nullified by such constitutional prohibition, though legislation may nevertheless be desirable and valuable for the purpose of defining the right and aiding in its enforcement."

We think if a case arises where there is no other method of enforcing a constitutional right except by suit against the State, then it must be considered that the State has given its consent to be sued in such a case. In this case, however, we hold that the Road Commissioners individually may be enjoined from proceeding in a manner forbidden by the Constitution—and that it is therefore unnecessary to permit suit against the State itself or its agency, the State Road Commission. See *Stewart* v. *State Road Commission, W. Va.*, 185 S. E. 567, wherein it is said:

"We recognize that the constitutional inhibition against taking private property for a public use without just compensation (article 3, § 9) is of equal dignity with the inhibition against suing the state. If necessary to maintain the rights of a citizen under the former, the two provisions would be construed together and the former treated as an exception to the latter. This has been done in some states. See *Chick Springs Water Co.* v. *Highway Dept.*, 159 S. C. 481, 157 S. E. 842. Our procedure, however, affords ample protection to one in the position of petitioner without resorting to that necessity. (1) He may enjoin the state road commissioner, and his representatives, personally, from unlawfully invading his property. *Coal & Coke Railway Co.* v. *Conley*, 67 W. Va. 129, 146, 147, 67 S. E. 613. (2) He may recover damages from the commissioner and his representatives, personally, for unlawfully entering upon and taking his property. The constitutional immunity of the state is not extended to its officials and their representatives in the performance of an unlawful

act. *Coal & Coke Railway Co.* v. *Conley,* supra. (3) He may mandamus the commissioner in person, to condemn his land. *Draper* v. *Anderson,* 102 W. Va. 633, 135 S. E. 837; *Haycock* v. *Jannarone,* 99 N. J. Law 183, 122 A. 805; 20 C. J., subject Em. Domain, § 521. 'It is settled,' says the Supreme Court of the United States, 'that in such a case a suit brought by the person entitled to the performance of the duty against the official charged with its performance is not a suit against the government.' *Houston* v. *Ormes,* 252 U. S. 469, 472, 40 S. Ct. 369, 370, 64 L. Ed. 667. Accord: *Fidelity & Deposit Co.* v. *Shaid,* 103 W. Va. 432, 438, 137 S. E. 878; 59 C. J., subject States, § 466."

It is said that the test of whether a state officer can claim immunity from suit depends upon whether his acts are authorized by law, and that the real question in this case is whether the Road Commissioners, in proceeding with this improvement without paying or arranging for ■ damages, are proceeding without authority. Let us accept that as a correct statement of the true test and the real question in the case. It is admitted that in the case of a physical taking of property without payment or condemnation, the Road Commissioners can be enjoined. It is also admitted that a "taking" may take place, although there is no physical trespass where the enjoyment of property is so impaired as to make it useless. It must be also admitted that the line between a "taking" and a "damaging," for the purpose of testing authority, cannot be accurately drawn in advance. It is contended, however, that in this case the pleadings show a consequential damage, rather than a "taking." We think that claim cannot be maintained without directly overruling the principle laid down in *Stockdale* v. *Rio Grande Western Railway Co.,* supra, quoted above, and *Dooly Block* v. *Rapid Transit Co.,* supra, quoted above.

However, without further argument as to whether there is in the case at bar a "taking" or a "damaging" of defendants' properties, we hold that the Road Commissioners are not authorized to either take or damage the citizen's property without proceeding as provided by law for ■ assessment of his damages. Therefore, when suit is

brought to enjoin the contractor, or the Road Commissioners as individuals, from violation of the constitutional right, the injunction should be granted, unless the State Road Commission submits to a hearing in the manner provided by law upon the question of the landowner's damages. We do not believe that the Constitution intends that the court shall decide in advance whether there is a damage "amounting to a taking," and refuse the injunction in case the damage is found to be less than enough to constitute a "taking" of property. Infinite confusion results from such a rule. One court will consider that any substantial damage to property constitutes a taking of property while others may hold that nothing short of damage which will render property wholly useless amounts to a taking.

We believe that the line of demarcation should be drawn at the point of "actionable damage." The Constitution clearly does not require compensation for damages not recognized as actionable at common law, but for a damaging of property "to the actionable degree" the Constitution makers intended the landowner to have just compensation equally with the landowner whose property was physically taken.

It is conceded that if the acts complained of are not authorized by law, then the contractor and the Road Commissioners individually may be enjoined. Can it be argued that the acts complained of are authorized by law when the fundamental and paramount law expressly forbids the damaging of private property for public use without just compensation? It is said, however, the Road Commissioners are authorized to improve state highways. Granted—but such improvements must be done in a manner not prohibited by the Constitution. If the construction involved in this case constitutes either a taking or a damaging of the property of the owner of abutting land, then the Road Commissioners should either (1) agree with the landowner upon the question of damages, or (2) condemn, before commencing the construction, or (3) upon suit for injunction

being brought, they (or the State Road Commission as such) should consent to a determination by the court or a jury of the question whether the property will be damaged, and, if so, the amount which will constitute "just compensation" for the taking or damaging, and should consent to judgment for damages if any are found. If the Road Commissioners refuse to pay the damage claimed by the landowner, and refuse to institute or submit to proceedings for determination of the question whether any damages will result and if so the amount thereof, then it seems clear that they are acting in violation of the constitutional guaranty and they should be enjoined from proceeding with the construction. The injunction, however, should not be unconditional. It should, before stopping the work, allow a reasonable time for institution of proceedings for assessment and payment of damages, and should provide that upon institution of such proceedings the restraint shall be terminated.

We think the true rule as to immunity of state officers from suit is stated in *Hopkins* v. *Clemson Agricultural College,* 221 U. S. 636, 31 S. Ct. 654, 656, 55 L. Ed. 890, 35 L. R. A., N. S., 243, 249, wherein it is said:

"But immunity from suit is a high attribute of sovereignty,—a prerogative of the state itself,—which cannot be availed of by public agents when sued for their own torts. The 11th Amendment was not intended to afford them freedom from liability in any case where, under color of their office, they have injured one of the state's citizens. To grant them such immunity would be to create a privileged class, free from liability for wrongs inflicted or injuries threatened. Public agents must be liable to the law, unless they are to be put above the law. For how 'can these principles of individual liberty and right be maintained if, when violated, the judicial tribunals are forbidden to visit penalties upon individual offenders * * * whenever they interpose the shield of the state? * * * The whole frame and scheme of the political institutions of this country, state and Federal protest' against extending to any agent the sovereign's exemption from legal process. *Poindexter* v. *Greenhow,* 114 U. S. 270, 291 [330], 5 S. Ct. 903, 962, 29 L. Ed. 185, 193, 207.

"The many claims of immunity from suit have therefore been uniformly denied, where the action was brought for injuries done or

threatened by public officers. If they were indeed agents, acting for the state, they—though not exempt from suit—could successfully defend by exihibiting the valid power of attorney or lawful authority under which they acted. *Cunningham* v. *Macon & B. R. Co.*, 109 U. S. 446, 452, 3 S. Ct. 292, 609, 27 L. Ed. 992, 994. But if it appeared that they proceeded under an unconstitutional statute, their justification failed, and their claim of immunity disappeared on the production of the void statute. Besides, neither a state nor an individual can confer upon an agent authority to commit a tort, so as to excuse the perpetrator. In such cases the law of agency has no application,—the wrongdoer is treated as a principal, and individually liable for the damages inflicted, and subject to injunction against the commission of acts causing irreparable injury."

It is contended that the due process clause of the Constitution is not violated in the case at bar, since the complaining landowners have the right to make claim to the State Board of Examiners for compensation. Let it be remembered, however, that the constitutional provision is that private property shall not be taken or damaged for public use without just compensation. The question of what constitutes "just compensation" is a judicial question which the landowner has the right to have determined in accordance with the general rules established for eminent domain proceedings in the particular jurisdiction. In Utah the assessment of compensation in eminent domain proceedings is to be by a court or jury. R. S. Utah 1933, title 104, c. 61. We think the officers of the State cannot force the landowner to submit the determination of what is "just compensation" to the Legislature or to the Board of Examiners (from which there is no appeal to the courts except for abuse of discretion). It may be considered settled that the fixing of compensation for private property taken for public use is a judicial and not a legislative question. This has been declared by the United States Supreme Court in *Monongahela Navigation Company* v. *United States*, 148 U. S. 312, 327, 13 S. Ct. 622, 626, 37 L. Ed. 463, in which Mr. Justice Brewer, speaking for the court, said:

"By this legislation, Congress seems to have assumed the right to determine what shall be the measure of compensation. But this is a judicial, and not a legislative, question. The legislature may determine what private property is needed for public purposes; that is a question of a political and legislative character. But when the taking has been ordered, then the question of compensation is judicial. It does not rest with the public, taking the property, through congress or the legislature, its representative, to say what compensation shall be paid, or even what shall be the rule of compensation. The constitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry. In *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420, 571 [9 L. Ed. 773] Mr. Justice McLean in his opinion, referring to a provision for compensation found in the charter of the Warren bridge, uses this language: 'They [the legislature] provide that the new company shall pay annually to the college, in behalf of the old one, a hundred pounds. By this provision it appears that the legislature has undertaken to do what a jury of the country only could constitutionally do,—assess the amount of compensation to which the complainants are entitled.' See, also, the following authorities: *Commonwealth ex rel. Attorney-General* v. *Pittsburg & Connellsville Railroad*, 58 Pa. 26, 50; *Pennsylvania Railroad* v. *Balt. & Ohio Railroad*, 60 Md. 263; *Isom* v. *Mississippi Central Railroad*, 36 Miss. 300.

"In the last of these cases, and on page 315 of 36 Miss., will be found these observations of the court: 'The right of the legislature of the State by law to apply the property of the citizen to the public use, and then to constitute itself the judge of its own case, to determine what is the "just compensation" it ought to pay therefor, or how much benefit it has conferred upon the citizen by thus taking his property without his consent, or to extinguish any part of such "compensation" by prospective conjectural advantage, or in any manner to interfere with the just powers and province of courts and juries in administering right and justice, cannot for a moment be admitted or tolerated under our constitution. If anything can be clear and undeniable, upon principles of natural justice or constitutional law, it seems that this must be so.' "

If the Legislature cannot appoint itself arbiter of the amount which constitutes just compensation for property taken for public use, then it cannot appoint itself arbiter in the case of property damaged for public use—when the Constitution guarantees just compensation in the one case equally with the other.

The length of this opinion is justified by the fact that there is here involved a fundamental principle of constitutional government. It ought not to be said that a constitutional right is given, but the courts are powerless to enforce such right. It must not be said that any officer of the State is not amenable to the process of the courts for violation of the law. The immunity of the State from suit cannot be successfully invoked by any official, high or low, to prevent the courts from enjoining an act forbidden by law. In the course of a recent historic constitutional controversy it has been forcefully said:

"Ever since Chief Justice Coke told James the First that even the king was 'under God and the law' the champions of liberty in England, their successors here, their colleagues in all free countries, have always understood the rights of men could be guaranteed only if those rights could be determined before an independent judiciary. Without courts that the sovereign does not control the rights of men can rest on no secure foundation. * * * The deepest difference between a free government and a despotism lies precisely here: in a free state the government is under the law, officials are creatures of the law, and the humblest individual may sue for his rights against the most powerful official. But in a despotism the individual has no rights which he can enforce as against the government."

We hold that under the statutes of Utah relating to eminent domain, and under the constitutional provisions of Utah herein referred to, the plaintiffs in the injunction suit cannot be compelled to submit to the Legislature or the Board of Examiners the question whether their property has been damaged by the construction complained of nor the question of what amount will compensate them for such damage.

The alternative writ of prohibition heretofore issued herein is hereby modified, in accordance with the opinion herein expressed, so as to eliminate from said writ any prohibition against proceedings in the case therein referred to as against defendants other than the State Road Commission. In so far as the writ prohibits proceedings in the district court as

against the State Road Commission, the same is made permanent. This, however, should not be construed to forbid proceedings against individual members of the State Road Commission in case the plaintiffs in the injunction suit ask leave to amend their complaint so as to make the individual members of the State Road Commission parties defendant. Costs herein will be taxed against plaintiffs.

FOLLAND, C. J., and MOFFAT, J., concur.

WOLFE and HANSON, JJ., dissent.

LARSON, J., being disqualified, HOYT, District Judge, sat.

WOLFE, Justice (dissenting).

The court's opinion presents on the surface a seemingly plausible and just solution, but I think it repudiates some very fundamental principles and does not accord with actualities. Its effect is to say to state officials: "If you perform the duties you are enjoined or required to perform in connection with State property or a State highway and someone claims you are consequently damaging his property, you must either settle with him or submit to suit or bring condemnation proceedings under pain of injunction." At the outset, I call attention to the fact that if these Road Commissioners were acting within their authority, then even a suit against them individually as defendants is a suit against the State. I am willing to treat the case as if the Road Commissioners were really defendants, for the prevailing opinion is applicable to such case. There should be no doubt that the test of whether a suit is in reality against the State when it is against public officials individually depends on whether those officers are acting within their legal and constitutional authority. *Wilkinson* v. *State,* 42 Utah 483, 134 P. 626.

Where that authority depends on the ascertainment of the fact of whether or not there is a "taking" the court may

entertain the suit in order to determine what are the facts, and, consequently, whether the authority existed. *Scranton* v. *Wheeler,* 179 U. S. 141, 21 S. Ct. 48, 45 L. Ed. 126. The results of the court's opinion might possibly be sustained on the ground that the lower court could issue the injunction pending the determination of such facts, but I am inclined to think that the complaint in the injunction suit, copies of which are attached to the petition for a writ of prohibition, really shows that there was not a "taking" but at the most a consequential damage. Moreover, I am concerned not so much in the correctness of the decision, but in the law laid down in the opinion. I think there is a fundamental difference in the "taking" by a state agency and a damage consequent on the performance of a duty which does not involve a taking. At this point it is not necessary to draw the line between a "taking" and a consequential damage. I shall attempt to do so later. Now it suffices to point out that I think the prevailing opinion reaches its result on three erroneous propositions: First: That the inclusion of the word "damaged" in section 22, Art. 1, reading, "private property shall not be taken or damaged for public use without just compensation," brings into being all the remedies that attend a "taking." Second: That by implication, section 22, art. 1, of our Constitution, permitted suits for damages to property against the State or the agencies which performed its functions when it was claimed the exercise of such functions did not "take" but only damaged property. Third: That due process is not served in the case of a state agency consequentially causing damage to private property in pursuance of its functions and authority by recourse to any other tribunal than a court.

I shall discuss the court's opinion in the light of an examination of these three propositions. It is said that "the framers of the fundamental law, after much debate and careful consideration of the hardship of the old rule which allowed compensation only in the case of a taking of property, wrote into the constitution a provision by which we

think they intended to guarantee to the landowner whose property is damaged just compensation with the same certainty as to the landowner whose property is physically taken." I think the inclusion of the word "damaged" was intended to give a substantitive right not theretofore enjoyed except as judicial decision had interpreted a "taking" to include damages. It did not contemplate the matter of remedy. The remedy to prevent a "taking" without agreed compensation or condemnation would be by injunction because such taking would be without authority. The remedy for damages caused by an agency of the state performing its functions would be enforced as it is enforced in all other cases against the state where remedy is not specifically given by statute, to wit, by resort to the Board of Examiners. In other words, the provisions of the Constitution intended to make actionable what was formerly damnum absque injuria. They did not intend and did not say that compensation should *first* be paid, nor did they say or intend to say that condemnation proceedings for ascertaining consequential damages would have to be provided. If it is true that the framers of the Constitution meant to guarantee the landowner compensation according to the same procedure as in the case of a taking, it might be inquired what would be the situation in case no procedure for determining damages ahead of time were provided by statute. Some states which have the identical provision in their Constitution that we have in ours provide no means for condemning for anticipatory damages, but only for a taking. In the case of *County of Chester* v. *Brower*, (1888) 117 Pa. 647, 12 A. 577, 2 Am. St. Rep. 713, it was said that where the Constitution provides that those invested with the privilege of taking private property for public use shall make just compensation for property taken, injured, or destroyed by the construction of their works, highways, or improvements, and no remedy is provided for consequential damages, recovery may be had by action on the case. See *Cooper* v. *Scranton City*, (1902) 21 Pa. Super. 17, for a case where remedy had

been provided since the Brower Case. If no remedy is provided for such damages by the statute on condemnation, resort would be had against a suable party by action at law and against the State by claim to the Board of Examiners. No injunction to require such party to make compensation beforehand for consequential damages could be had because there would be no provision for such condemnation.

In the case of *County of Mercer* v. *Wolff*, 237 Ill. 74, 86 N. E. 708, 710, it was said:

"But when no part of the land of an abutting owner is taken, the Constitution does not require the ascertainment and payment of his consequential damages before entry can be made upon adjoining property. Damages resulting to an abutting proprietor, no part of whose land is physically taken, are not within the contemplation of the eminent domain act, but he is remitted to his action at law for his damages."

"Damages resulting from a public improvement to an abutting proprietor, no part of whose land is physically taken, are not within the contemplation of the Eminent Domain act, but the proprietor is remitted to his action at law, and he cannot enjoin the construction of the improvement because his property will suffer consequential damages which have not been ascertained in advance and paid." (Syllabus) *S. D. Childs & Co.* v. *City of Chicago*, 279 Ill. 623, 117 N. E. 115, decided in 1917.

The Illinois Constitution, like ours, contained the word "damages."

The point sought to be made is that the word "damages" was not included in article 1, Sec. 22, to guarantee a certain procedure as for a taking, because it was quite likely that condemnation proceedings for a taking might be furnished by the statutes and none for anticipatory damages. Would this court hold that if no provisions for obtaining damages as distinguished from a "taking" had been included in the statutes on condemnation, nevertheless damages could be obtained in advance? Therefore, the statement in the opinion that the framers intended to guarantee the same procedure for a damage as for a taking is placed in doubt.

As a matter of fact, in many cases the courts have refused to grant injunctions against suable parties where consequential or anticipatory damages have not been paid or arranged for. But it is practically mandatory on a court of equity to issue an injunction to prevent a "taking." See 20 A. L. R. 516. Therefore, again it appears that the one claiming that he will suffer a "damage" has not by the Constitutional provision, even against suable parties, the same remedy as he who will suffer a taking. The difference in remedy is further amplified as follows:

In *Denver & S. F. R. Co.* v. *Domke*, 11 Colo. 247, 17 P. 777, 780, it was said:

"It follows therefore, that the increased burden mentioned [laying a third rail and changing tracks from narrow to wide gauge] would not constitute an actual taking of plaintiffs' property, though their peculiar interest in the street as abutting owners might entitle them to compensation for injuries inflicted."

"Where the fee of an abutting lot owner is not sought to be taken, he cannot, under the Constitution or under the statute of eminent domain, enjoin the construction of a viaduct or its approach on a street in front of his lot merely because the damages to his premises thus occasioned are not compensated in advance, provided the structure is being erected under proper legislative and municipal authority." *Albi Mercantile Co.* v. *City and County of Denver*, 54 Colo. 474, 131 P. 275, 276; *Haskell* v. *Denver Tramway Co.*, 23 Colo. 60, 46 P. 121; *Corcoran* v. *Chicago, M. & N. R. Co.*, 149 Ill. 291, 37 N. E. 68; *Clemens* v. *Connecticut Mut. Life Ins. Co.*, 184 Mo. 46, 82 S. W. 1, 67 L. R. A. 362, 105 Am. St. Rep. 526; *Medley* v. *Berry*, 143 Mo. Ap. 641, 128 S. W. 225; *Fulton* v. *Short Route Ry. Transfer Co.*, 85 Ky. 640, 4 S. W. 332, 7 Am. St. Rep. 619; *Rische* v. *Texas Transp. Co.*, 27 Tex. Civ. Ap. 33, 66 S. W. 324; *D. M. Osborne & Co.* v. *Missouri Pac. Ry. Co.*, 147 U. S. 248, 13 S. Ct. 299, 37 L. Ed. 155.

In *Spencer* v. *Point Pleasant & Ohio R. Co.*, 23 W. Va. 406, it was held that if a railroad company, without taking the land, damaged it by the construction of its road, the owner of such land could not as a matter of right enjoin said company under a constitutional provision which read like ours. The decision discusses the proceedings of the Constitutional Convention. It so aptly suggests the line

I have been attempting to draw that I quote from the decision as follows:

"The committee of the whole placed persons whose property was damaged on the same footing as persons whose property was taken, and required the company which damaged a person's property but did not take it to pay them damages in advance or secure them to be paid. But after full consideration the convention, by a vote of more than three to one, changed in this respect the report of the committee of the whole, recognizing this marked difference made between persons whose property was taken and those whose property was not taken but merely damaged. With reference to persons whose property is taken without just compensation being either paid or secured to be paid, our courts were obviously, in every case, compelled to grant injunctions against the internal improvement company till the just compensation was paid or secured to be paid, as in no other possible manner could this constitutional provision be enforced. But with reference to persons whose property is damaged but not taken, and who while entitled to the damages they sustain are by the express provisions of this Constitution not so entitled as of right in advance of their sustaining the damage, nor entitled as of right to have compensation secured in advance of the damages being sustained it is obvious, that as a general rule they must wait till the damages are sustained, and if they are not then paid, they must sue the improvement company doing the damage in a court of law, the appropriate tribunal to try cases, in which damages are claimed for injuries."

In the case of *Settegast* v. *Houston, O. L. & M. P. R. Co.*, 38 Tex. Civ. Ap. 623, 87 S. W. 197, it was held that by the "addition of the guaranty against damaging property, to that against taking property, the right was conferred to sue for damages for the injury sustained, *and not the right to arrest the progress of the work* until compensation was made or secured." (Italics supplied—quotation from A. L. R. note, supra.)

The fact that in the case of *Stockdale* v. *Rio Grande Western Ry. Co.*, 28 Utah 201, 77 P. 849, the court granted the injunction arresting the work until the amount of consequential damages was fixed and paid, does not necessarily mean that the court would in all cases do the same.

The prevailing opinion, in fact, admits that the judge should use his discretion. Such rule would hardly be advocated in the case of a threatened taking. Thus, it appears that Sec. 22, Art. 1, of the Constitution could hardly have contemplated that the landowner be guaranteed just compensation for damages with the "same certainty as the landowner whose property is physically taken."

In all the above cases, the parties which the courts refused to enjoin were suable parties. The courts, as in our case of *Stockdale* v. *Rio Grande Western Ry. Company,* supra, could have enjoined the parties from proceeding until the consequential damages were settled for. The lesson which they teach, however, is that even as to suable parties, the insertion of the word "damaged" in Sec. 22, Art. 1, did not imply that the property owner was entitled to all and the same remedies as he would have to prevent a taking.

Moreover, it can be shown historically that the real reason damages were included in Sec. 22, Art. 1, was not to guarantee a certain procedure, but to guarantee a substantive right to damages. This was because in earlier days no action lay for consequential damages. The sovereign inherently had the power of eminent domain, and it could confer this power on certain corporations and municipalities for what reasonably could be said to be for a public use. But whether it exercised this power itself or permitted it to be exercised by others, by virtue of the due process clauses in the State and Federal Constitutions, it could not take without paying or arranging for just compensation. And if it "took," as distinguished from leaving a damage without a taking, it was required to exercise the condemnation statutes if agreement could not be arrived at. If it "took" without such procedure, the individuals who supposedly represented the State were considered as acting without authority, and they could be enjoined. If a suable corporation, municipality, or party with power of eminent domain attempted to take without condemning, such party itself could be enjoined. It was not necessary to enjoin the individuals representing the corpora-

tion or municipality. But where an agency representing the State acted, the test of whether it could be enjoined was whether or not the individuals chosen to operate the agency were acting within their authority. If they "took" land or property of an owner without condemnation, they were trespassing and were not acting within their authority; but if they worked on the property of the State by doing the very acts which their agency was created to do or which were necessary or convenient to its functioning, and by so doing consequential damage was caused to another, they were still acting within their authority. And in the early history of the development of this phase of the law, such consequential damage could not be recovered, and under the United States Constitution, which requires just compensation for a taking only to be made, consequential damages unless they virtually amount to a taking cannot yet be recovered.

The evolution was about as follows: From the great welter of cases (I have examined several hundred) it appears that in the early days in the states and in the United States under the Fifth Amendment (which only required just compensation for a taking), the law was that only a physical taking of property need be compensated for. Owing to the harshness of this doctrine, "taking" was rather early extended to include cases where there was no trespass, but such a total practical deprivation of enjoyment as to amount to a taking. Property so surrounded as to cut off all access presents a case in point. Later were added cases where there was no direct invasion, but the use of the land was destroyed by the consequences of the improvement, such as flooding. *United States* v. *Lynah*, 188 U. S. 445, 23 S. Ct. 349, 47 L. Ed. 539; *Weaver* v. *Mississippi & Rum River Boom Co.*, (1881) 28 Minn. 534, 11 N. W. 114, 115.

The courts thus found it necessary before the inclusion of the word "damaged" in the Constitution to hold that serious damages were a "taking," thus circumventing the principal of damnum absque injuria. But in 1870, Illinois in

order to overcome the injustice of curtailing the enjoyment of property without paying compensation, which was theretofore damnum absque injuria, amended its Constitution, Art. 2, Sec. 13, to provide for the payment of just compensation for property damaged as well as taken. But it did not necessarily follow that the damages could be obtained by condemnation. That depended on the eminent domain statutes. The constitutional amendment was for the purpose of confirming a right not theretofore had to obtain damages for injuries theretofore nonactionable. Illinois was followed by other states until in 1915 at least twenty-four states had such constitutional provisions. 10 R. C. L. 165. But as seen in the case of *County of Chester* v. *Brower*, supra, not all of them had condemnation statutes which permitted or required condemnation for such consequential damages. And only such consequential damages could ordinarily be recovered for their condemnation as could be known in advance of construction. It might be very difficult to know or ascertain the impairment of enjoyment due to smoke, noise, odors, or vibration until demonstration was given. And not yet has the law recognized mere depreciation of market value of property where unattended by a nuisance as a consequential damage. *County of Mercer* v. *Wolff*, supra.

The struggle which went on over the consequential damages caused by the single situation of the use of streets for elevated railroads is well illustrated in the cases of *Story* v. *New York Elev. R. Co.*, 90 N. Y. 122, 43 Am. Rep. 146, and *Lahr* v. *Metropolitan Elev. R. Co.*, 104 N. Y. 268, 10 N. E. 528, both known as the Elevated Railroad Cases, and *Lewis* v. *New York & Harlam Railroad*, 162 N. Y. 202, 56 N. E. 540, which sought to distinguish the former two cases, and the case of *Muhlker* v. *New York & Harlam R. Co.*, 197 U. S. 544, 25 S. Ct. 522, 49 L. Ed. 872, a four to five decision which refused to recognize the distinction. See, also, *Stanwood* v. *City of Malden*, 157 Mass. 17, 31 N. E. 702, 16

L. R. A. 591; *Keats* v. *Hugo,* 115 Mass. 204, 15 Am. Rep. 80; *Barnett* v. *Johnson,* 15 N. J. Eq. 481.

The upshot of this is that the historical development points to the fact that the framers of the Constitution probably never thought of the matter of procedure when they inserted the word "damaged" in Sec. 22, Art. 1, but intended to make actionable what was not theretofore actionable, or which was only actionable by dint of straining a damage into a taking. I am quite confident that the framers of the Constitution did not mean impliedly either to permit the State or one of its nonsuable agencies to be sued, or to accomplish the same result by permitting the courts to hold that any officer of the State actually improving state property in the very manner it was intended to be improved could be said not to be exercising lawful authority to so do, if someone asserted this property would be damaged, until the question of whether it would be damaged and the extent, if any, was determined and payment was made or arranged for. I shall later discuss this more at length under a consideration of what I pointed out as the second of the erroneous propositions upon which the opinion is based. In further support of the proposition that the framers of the Constitution did not necessarily intend to give to him who suffered a damage, advantage of all the procedure to which he could resort to prevent a taking, I cite the following: In the Settegast Case, 38 Tex. Civ. App. 623, at page 631, 87 S. W. 197, 200, it was held:

"We are of opinion therefore, that the insertion of the word 'damaged' in the Constitution, was made in order that persons suffering damage from the lawful construction and operation of public or quasi public works might have their action for damages though the acts complained of might not come within the definition of the word 'taken', and that the insertion of the word conferred a right which *by reason of the legislative grant to do the acts complained of* had not theretofore existed. *The right thus conferred was the right to sue for damages for the injury suffered, and not the right to arrest the progress of the work until compensation was made or secured."* (Italics supplied.)

The case presupposes that where a legislative grant existed, the acts were lawful and no right to damage existed before the constitutional amendment; that after the Constitution gave the right to consequential damages the guaranty did not go to the extent of guaranteeing a condemnation proceeding to enforce it. While there is no legislative grant to do the specific act of building a viaduct, it is well within the power of the Road Commission. Being so, the abutting owners are relegated to such proceedings against the State as are provided by statute, R. S. 1933, Sec. 26-0-7, et seq., i. e., recourse to the Board of Examiners.

The third reason to be advanced as to why the first proposition is erroneous is a practical one and inherent in the very nature of a taking as compared to a damage. A taking is definite and involves a trespass. A damage is anticipatory and indefinite. It is difficult at times to ascertain ahead of time a consequential damage. Even the most skillfully constructed power plant may emit cinders and make some noises. It would be difficult to ascertain the extent of the damage in advance. It may be said that in such cases the court of equity might refuse to issue the injunction and leave the plaintiff his recourse at law. But not so in a taking. This simply serves to emphasize the point that the framers of the Constitution could not have intended to imply that the landowner was subject to the same remedy and procedure in the case of a damage as in the case of a taking. The very exigencies attendant on the two situations are different.

Superficially it appears that logically damages being coupled with a taking should draw in exactly the same reasoning and be placed in all legal aspects on exactly the same plane as a taking, substantively, procedurally, and remedially. But law is not logic. As far as possible, it should be logical so that the mind may more easily grasp and dovetail its principles, but it must, above all else, meet the actualities of life rather than the principles of logic. In case of public works, it is a matter of obtaining some workable, practical

rule which will not permit the authorities in the execution of their objectives to take or so materially injure property or the enjoyment thereof without arranging for compensation, and, on the other hand, not permit a property owner to delay public works in each case where he claims damages, regardless of their type or extent. But I think a more profound analysis will show that the distinction between damages and taking, which in this opinion I seek to draw as far as a State improving its own highways is concerned, is logical. The logic of the distinction, as said before, lies in the very nature of the type of thing which is done in the two cases. If Sec. 22, Art. 1, read, "Private property shall not be taken or damaged for public use, nor shall personal injuries be inflicted without just compensation," I very much doubt if any one would maintain that the same procedure or remedies would be applicable to the redress of personal injuries as to the redress for a damage or for a taking. The very nature of the injury done demands a differentiation of method of redress.

I have endeavored to demonstrate the fallacy of the first proposition on which the court's opinion is based. I shall now treat the second proposition, to wit, that by implication Sec. 22, Art. 1, permitted the State to be sued. It may be contended that the court's opinion expressly excludes holding that the State or one of its agencies acting within its authority can be sued and that only the State Road Commissioners, as individuals, are to be enjoined. But this does not advance the plot. It is fundamental that where those in charge of an agency representing the State are sued in their individual capacities, it is in effect a suit against the State if the act or authority under which they act is constitutional and they are acting within that authority. No one questions that the right of the State Road Commission to erect a viaduct for the safety of traffic is constitutional. Is it within the authority of the Commissioners? It is not only within their authority, but most appropriate that such improvements of the public right of way be made for the public.

Nor do I see that anything is gained by saying that this authority is conditional on their trying out the issue of a claimed consequential anticipatory damage and settling for it. Not involving a trespass, it does not become a condition of the exercise of lawful authority as in the case of a taking. They are working on their employer's—State's—right of way. Any damage is consequential. I shall later discuss the line between a damage and a taking. But, conceded that there is only a damage and not a taking, the commissioners are, in simply improving the right of way, which it is their duty or right to improve, acting within their authority. If this is the case, the court's opinion must necessarily rest, to be correct, on the proposition that Sec. 22, Art. 1, impliedly consents that the State may be sued for damages. The trick of replacing the individual commissioners for the State Road Commission in the injunctive suit leaves us in that regard exactly where we were before, because according to the basic test the suit being against the officers individually, acting within their lawful authority, is a suit against the State. When an agency of the State is acting as it is required or permitted to act, it was not intended that it or its representatives should be permitted to be sued in injunction in such fashion as to compel it to condemn for alleged consequential damages when it might not even admit that it would cause any. Such condemnation suit is, in effect, a suit in which it is presenting itself for judgment and in which it is virtually a defendant. An injunction suit, therefore, which requires it to present itself for judgment, if consequential damages will be caused, is in effect an order of the court requiring a nonsuable agency of the State acting in its lawful business to be sued. Unless Sec. 22, Art. 1, by implication permits this, the holding of the court is wrong.

In passing, it should be noted that the court's conclusion that not the State or its agency by name may be sued or enjoined, but the individuals composing it, may lead to very unfortunate results. For instance, if the task of construct-

ing a State building is enjoined on an official or commission and neighbors claim they will be consequentially damaged, what will be the results? The appropriation ordinarily would include nothing for such damages, so they could not be paid out of the appropriation for building. If the officials went ahead, they might be personally sued. This risk they would hardly dare take. If they were enjoined, work might be held up until the next legislative session. It is for this reason at the beginning of this opinion I stated that the decision did not accord with actualities. As a practical matter public improvements should not be held up pending a determination of claimed consequential damages. In *Wilkinson* v. *State*, 42 Utah 483, 134 P. 626, 631, it was held that it was idle to say that it was not a suit against the State, where the State funds are the ones which are to be looked to to satisfy the judgment.

Consent of the State to be sued cannot be implied. *Wilkinson* v. *State*, supra; Note, 42 A. L. R. 1464. In one case only cited in the court's opinion have I found it stated that such a provision as Sec. 22, Art. 1, impliedly consents to suit against the State. That is the case of *Chick Springs Water Co.* v. *State Highway Dept.*, 159 S. C. 481, 157 S. E. 842. The Court did state in that case that by inference the constitutional provision against taking property without just compensation gave implied consent to sue the State for such property taken, but did not touch on the question of property damaged. The decision should have been placed on the ground that the State Highway Department was not acting within its authority in "taking" property without compensation. The holding that consent to be sued is implied is certainly against the weight of authority, and was quite unnecessary in that case.

The opinion of the court construes Sec. 22, Art. 1, as if it read,

"Private property shall not be taken or damaged without *first paying* just compensation."

The case of *State* v. *Superior Court for Walla Walla County,* 167 Wn. 334, 9 P. 2d 70, 71, illustrates the difference between a constitutional provision containing such word "first" and one which, like ours, does not:

"Under this provision of the Constitution [exactly like ours except that it provides 'just compensation shall *first be made or paid* into court for the owner'] it has been held from an early day that the landowner must not be put to the expense of litigation in order to preserve his constitutional right to have the amount of damages determined by a court in a proceeding to which he is a party."

The court held that the Road Commissioners by not first paying compensation were not acting within their authority, and, therefore, not representing the State, and therefore did not need to be sued in Thurston County where the statute required all suits against the State to be brought. It being required to *first* pay compensation, the constitutional guaranty is not only that just compensation shall be paid—which is noncommittal as to the method of collecting it—but that it shall be paid *before* the taking or damaging. Under such reasoning the condition of payment for damages before doing the work may be a condition to exercising the authority and, not having been done, the Road Commissioners would be acting without authority and could be enjoined.

In a very recent case from Kansas, *Gresty* v. *Darby,* 146 Kan. 63, 68 P. 2d 649, 650, the matter of whether a suit was in reality against the State, although brought against the Road Commissioners individually, was up for adjudication. In that case the suit was for tort for the permanent injury to land by diverting waters in the course of construction of a road. If it was a suit against the State, the action was by statute required to be brought in Shawnee County. It was brought in Scott County. A motion to quash the summons on the ground that it was a suit against the State was filed. The court said that it should have been sustained. In the opinion the court says:

"Obviously, plaintiffs intentionally refrained from naming the state highway commission a party defendant, but candor compelled them to plead that one of the defendants was the director of the highways of the state 'highway commissioners jointly and co-operating together procured and directed' the work complained of to be done. It further clearly appears from the petition that the work complained of was done in the improvement and drainage of a state highway. These defendants are, by statute (G. S. 1935, 68-404), the managing and directing officers of the state highway commission, a corporate entity (G. S. 1935, 74-2001), an arm of the state created by the Legislature to act for the state in constructing and maintaining state highways (*McCandliss Construction Co.* v. *Neosho County Com'rs*, 132 Kan. 651, 296 P. 720), as authorized by the Constitution (article 11, Secs. 9, 10). As such officials, they are authorized to determine what work shall be done, and to direct and procure it to be done. G. S. 1935, Sec. 74-2006. Necessarily, this calls for the exercise of official judgment and discretion. It is not alleged that what they procured and directed to be done was without the scope of their official authority, neither is it alleged that they acted through malice, or corruptly, or capriciously. All that is charged is that what they directed and procured to be done resulted in damages to plaintiffs. * * *

"The petitions in the actions are open to the construction that they are actions against appellants in their official capacity as state highway director and commissioners. Indeed, we regard this as the proper construction of the petitions. They are therefore actions against the state highway commission notwithstanding the fact it is not specifically named as a defendant, for appellants, in their official capacity, act only for and on behalf of the state highway commission. *Garden City, G. & N. Railroad Co.* v. *Nation*, 83 Kan. 237, 109 P. 772; *Heman Construction Co.* v. *Board of Administration*, 105 Kan. 291, 182 P. 386; *Longstreet* v. *County of Mecosta*, 228 Mich. 542, 200 N. W. 248. The venue of such actions is in Shawnee County, where the principal offices of the state highway commission are situated."

The case of *Hunt-Forbes Constr. Co.* v. *Robinson*, 227 Ky. 138, 12 S. W. (2d) 303, seems to be directly in point. A contractor employed by the Highway Commission was sued by a landowner whose property was badly damaged by a cut made according to plans furnished by the road commission—his house even becoming undermined by his farm gravitating into the cut. It was admitted the contractor was not negligent in carrying out the plans. The court said:

"The State is sovereign and cannot be sued without its consent. It has not given its consent. Therefore, the state could not be sued by appellee for the damages, if any, caused him by the construction of the road. It is contended, therefore, that appellant could not be held responsible for any damages occasioned in the performance of the contract made with the state if performance was without negligence and within the terms of the contract. This seems to be the general rule in this state." (Citing cases.)

Kentucky had a provision of its Constitution, Sec. 242, which required compensation for injuring property. In *Kentucky State Park Comm.* v. *Wilder,* 260 Ky. 190, 84 S. W. 2d 38, cited in the prevailing opinion, the Supreme Court of Kentucky, mentioning the Robinson Case above, decided that the Park Commission could be enjoined from "taking" property for public use, thus clearly drawing a distinction between consequential damage and a taking. The same distinction was recognized in *Anderson* v. *State Highway Comm.,* 252 Ky. 696, 68 S. W. 2d 5. The prevailing opinion has not cited a single case where an official acting within his authority was enjoined because of a consequential damage resulting.

I think, therefore, the members of the State Road Commission acted within their authority in making the changes in the highway for the safety of the public without first, upon claim for consequential damages herein shown by the pleadings, offering or arranging for the pay of such damages and that they cannot be coerced or delayed by injunction into bringing a condemnation suit to have such damages appraised.

I now come to the third of the erroneous propositions which I think form the basis of the court's opinion, to wit, that due process is not served in requiring the landowner to resort to the Board of Examiners. This proposition is necessarily embraced in the following language of the opinion:

"We are of opinion that where private property is taken *or damaged for public use as is alleged in the complaint in the injunction suit without any agreement with the owner for compensation, and*

*without any proceedings for assessment in the manner provided by
the statute relating to eminent domain, a court of equity may prop-
erly take jurisdiction where the only remedy remaining to the land-
owner is to present a claim to the board of examiners. * * **

"We think it is clear that the framers of the Constitution did not
intend to give the rights granted by Sec. 22, and then leave the citi-
zen powerless to enforce such rights. We hold that this is so whether
the injury complained of by the plaintiffs in the injunction suit is
considered a 'taking' of property, or a 'damaging' of property * * *"

It may be that the principle that the State cannot be sued
is ethically wrong and outmoded. Perhaps the State as the
collective entity representative of all the people should not
hide behind the immunity from suit in its own courts be-
cause of its sovereignty when one of all of its citizens seeks
redress from a claimed wrong committed by the State. I
shall pursue no investigation into the proposition because
I think the legislature and not the courts must bring about
such a change. We must start with the assumption that the
sovereign is immune. But by the Constitution the State or
its agencies cannot deprive any citizen of his property with-
out due process of law. The fact is that Sec. 22, Art. 1, is
simply a special application of the more general prohibition
against depriving any person of his property without due
process of law. The provision of our Constitution which
provides that property shall not be taken or damaged for
public use without just compensation is a guaranty that,
even when the State in its sovereign capacity takes property
for public use, it shall be paid for. Even if it were not in
the Constitution, the provision that no person shall be de-
prived of his property without due process would prevent
the "taking of property without just compensation. In a
government like England there may be a confiscation of
property for public use without compensation if Parliament
should pass such a law, but all bills for eminent domain
passed by Parliament provide for condemnation proceed-
ings. This is because while Parliament makes the "Law
of the land"—another expression for due process—it recog-

nizes that, even though there is no express limitation on its action, there is a limitation by tradition expressed in the Magna Charta. So while it would not be due process of law to take private property for a private use even if it were paid for or however fair was the process of inquiry and appraisement, the taking for a public use is due process in the substantive sense. This is because the power of eminent domain is inherent in sovereignty. Otherwise, the State could not function. It must, however, be a public use. What is a public use is within bounds, to be determined by the legislature just as the legislature may determine who shall exercise this power of eminent domain. While a taking for a public use satisfies the substantive requirement of due process, the actual process by which the taking for public use is accomplished must also satisfy the procedural requirements of due process. It must be due process, not just any process.

The question then arises: If the landowner is refused injunctive remedy and cannot sue the Road Commission or the road commissioners individually if they are acting within their authority and is thus driven to the Board of Examiners for his remedy, is he accorded due process of law? The opinion thinks not. I think he is. Due process does not necessarily have to be judicial process, that is, process by which a court determines the damage to property, if any. And where redress is against the sovereign it may indeed not be through the courts. There may, however, be judicial process in the sense of there being accorded an opportunity to be heard and a fair inquiry when the sovereign is a party, by a tribunal not known as one of the regular courts. The Court of Claims of the United States is an example.

The statement of Mr. Justice Bradley in *Davidson* v. *New Orleans*, 96 U. S. 107, is often given as a general standard of due process:

"In judging what is 'due process of law', respect must be had to the cause and object of the taking, whether under the taxing power, the power of eminent domain, or the power of assessment for local im-

provements or none of these, and if found suitable or admissible in the special case, it will be adjudged 'due process of law', but if found to be arbitrary, oppressive and unjust it may be declared not 'due process of law'."

From this it may be seen that different process may be provided for the State than for a suable party. The state does not have to permit itself to be sued. While in the case of a corporation or individual permitted to exercise powers of eminent domain for what are denominated public uses, somewhere in the process of condemnation due process may require that a court be permitted to pass on the matter, this may not necessarily be so when the State takes property for public use. It is not necessary to determine that question because we have already seen that if officials "take" property as distinguished from consequentially damaging it, they are not acting within their authority unless they follow the condemnation proceedings, but that when they operate on the state's property or highways in the pursuit of the purposes for which their agencies were created, they do act within their authority even though they cause consequential damage.

The prevailing opinon quotes from Mr. Justice Brewer's opinion in the case of *Monongahela Navigation Co.* v. *United States,* 148 U. S. 312, which was a case in which the legislature itself put its own valuation on the compensation to be paid. That case did not hold that the question of compensation for damages could not be ascertained when the State was a party by a tribunal other than an ordinary court. As said in *Wilkinson* v. *State,* supra, "The Board of Examiners is a creature of the Constitution and the courts are no more than that." The inquiry by the Board of Examiners is a judicial inquiry. A claim is made, a hearing set, evidence taken, and an award or a denial of it made from the evidence. The Board of Examiners in such case sits as a court. The court's opinion seems to assume that if the ordinary court or jury gave a verdict it would not be necessary to go before the legislature. It is well to ask in this

connection how the judgment would be collected otherwise. It is conceded by the opinion that the suit would have to be against the commissioners individually. Therefore, judgment would have to be against them. Could a personal judgment not against the Road Commission be collected out of state road funds? Could the state auditor be mandamused to issue a warrant and the treasurer to pay it when the judgment was solely against the commissioners personally?

In some of the cases where injunction was denied as to suable parties, it was on the ground that there was a plain, speedy, and adequate remedy at law. *State ex rel. Whitten* v. *Spokane,* 92 Wash. 667, 159 P. 805; *Thorbert* v. *Hoquiam,* 77 Wash. 679, 138 P. 304; *Spencer* v. *Point Pleasant & O. River R. Co.,* supra; *Watson* v. *Fairmont & Suburban R. Co.,* 49 W. Va. 528, 39 S. E. 193; *Stetson* v. *Chicago & E. R. Co.,* 75 Ill. 74. It is said in the instant case that there is no plain, speedy, and adequate remedy at law because recourse must be had to the devious method of applying to the Board of Examiners and the Legislature. But if the Road Commissioners are acting within their authority, suit cannot be permitted against the State on the theory that the means of redress is not as adequate or certain as would be allowed against a suable party. In fact, if a judgment were obtained against the Road Commission or Road Commissioners, execution by garnishment or otherwise could not issue against state road funds. If the commissioners refused to pay, recourse to the Legislature might still be the only remedy. *Bragaw* v. *Gooding,* 14 Ida. 288, 94 P. 438; *Thomas & Faris* v. *State,* 16 Ida. 81, 100 P. 761.

It was said by Mr. Justice Holmes in his dissenting opinion in the case of *Madisonville Traction Co.* v. *St. Bernard Min. Co.,* 196 U. S. 239, concurred in by three other justices, not, I think, disturbed in this respect by the prevailing opinion:

"The fundamental fact is that eminent domain is a prerogative of the State, which on the one hand may be exercised in any way that the State thinks fit, and on the other may not be exercised except by

an authority which the State confers. The taking may be direct, by an act of the Legislature. It may be delegated to a railroad company, with a certain latitude of choice with regard to the land to be appropriated. It may be delegated subject to the approval of a legislative committee or of a board other than a court. When the State makes use of a court, instead, for instance, of a railroad commission, the character of the proceeding is not changed. The matter still is wholly within its sovereign control."

The claim for consequential damages is in the same class with all other claims against the State and is governed by Sec. 13 of Art. VII of our Constitution, which reads in part:

"* * * They shall, also, constitute a Board of Examiners, with power to examine all claims against the State except salaries or compensation of officers fixed by law, and perform such other duties as may be prescribed by law; and no claim against the State, except for salaries and compensation of officers fixed by law, shall be passed upon by the Legislature without having been considered and acted upon by the said Board of Examiners."

The case of *Wilkinson* v. *State*, supra, is in point. It is there said:

"The reasoning of both the Nevada and Idaho Supreme Courts seems reasonable and logical. It is pointed out by those courts that the board of examiners is a creature of the Constitution, and that the courts are no more than that. It is also suggested that neither can exercise powers that are withheld by that instrument. The people of this state, who are responsible for the Constitution and its terms, had the right to confer or to withhold power as to them seemed proper. If, therefore, they created a tribunal and conferred powers upon it to hear and determine the justness of all claims not specifically otherwise provided for, the will of the people must be obeyed by the courts as well as by all others. As we have seen, even the legislature is prevented from passing upon any claim until the same has been passed on by the state board of examiners. The conditions upon which a claimant may have his claim considered and passed on by the legislature of this state are provided for in Comp. Laws 1907, Sec. 945. In the same compilation, Secs. 929 to 949x1, inclusive, the duties of the board of examiners and the procedure to be followed in presenting and disposing of claims are fully set forth. A constitutional tribunal is therefore provided for in this state in which any

claimant may be heard and from whose decision he may appeal to the only power which can provide funds for the payment of his claim if found just and if it be allowed. This is all any claimant can reasonably ask."

If the Board of Examiners acts arbitrarily it may be subject to control of the court as suggested in this case and in the cases of *Thoreson* v. *State Board of Examiners,* 19 Utah 18, 57 P. 175; *State* v. *Cutler,* 34 Utah 99, 95 P. 1071; and *Plymouth Coal Co.* v. *Pennsylvania,* 232 U. S. 531, at 545, 34 S. Ct. 359, 58 L. Ed. 713. It is said that the Board is psychological leanings, but the Supreme Court of the United States refused to go back of the findings of a jury because it only gave the railroad $1, saying that due process did not depend on the facts as found but on the process by which facts were to be found. *Chicago, B. & Q. R. Co.* v. *Chicago,* 166 U. S. 226, 17 S. Ct. 581, 41 L. Ed. 979.

I conclude, therefore, that when the State is the real party which has caused damages in pursuit of its lawful business through one of its agencies not acting negligently, the sufferers of that damage must resort to the Board of Examiners for redress, and that such is due process under our Constitution and the Constitution of the United States. The result, therefore, is that tested by the due process clause in this case the State Road Commissioners were acting within their authority.

I have so far examined with some particularity the soundness of the three propositions on which I conceive the prevailing opinion is based. I shall now revert to the case of *Stockdale* v. *Rio Grande Western Ry. Co.,* 28 Utah 201, 77 P. 849, so much relied upon in the court's opinion. The opinion quotes from that case in part as follows:

"The authorities do not all agree as to just what will amount to a taking of private property within the meaning of the provision of the Constitution of the United States, which provision, with an occasional change in the phraseology, has been incorporated into the constitutions of the several states, namely, 'private property shall not be taken for public use without just compensation.' Many of the earlier

cases adopted the more restricted construction, and held that, to bring a case within the foregoing provision under the constitution, there must be an actual physical appropriation of the private property sought to be converted to a public use; but, as stated in 1 Lewis on Eminent Domain (2d Ed.) Sec. 57, 'The law, as to what constitutes a taking, has been undergoing radical changes in the last few years,' and the great weight of judical authority, which we believe to be supported by the better reason, and which is more in accord with our ideas of equity and natural justice, holds that any substantial interference with private property which destroys or materially lessens its value, or by which the owner's right to its use and enjoyment is in any substantial degree abridged or destroyed, is, in fact and in law, a taking, in the constitutional sense, to the extent of the damage suffered, even though the title and possession of the owner remains undisturbed."

When Sec. 22, Art. 1, contained the word "damaged" and the plaintiffs in that case were seeking to restrain the improvement until the damage was paid, it was pure dicta to undertake to define the depreciation of adjoining property by the building of a spur track where no entry or trespass was involved. If the prevailing opinion is based on the proposition that a consequential damage in the nature of a depreciation of an abutting owner's property is a "taking," then all distinction between a "damage" and a "taking" is obliterated and I see no reason for the inclusion of the word "damaged" in Sec. 22, Art. 1. Two notable differences between that case and this are obvious. That was a case of a railroad given the right to increase the burden of the easement over that for which the street was dedicated. In the case of *Story* v. *New York Elevated R. Co.*, supra, it was pointed out that the erection of an elevated railroad on the street placed a servitude not contemplated to be borne by the abutting owner. But where the street itself is raised in the form of a viaduct for safety purposes there is no additional use made of the street but exactly the same use, to wit, the providing of a safer route for the same traffic which thitherto traversed the street in contact with the railroad tracks. If the railroad company had been permitted to use the street for its tracks with or without a viaduct, I opine

the rights of the abutting owners would have been quite different than when an agency having the duty or right to improve the right of way for the use to which it had already been dedicated, had so attempted to improve it by constructing a safety viaduct. But I do not mean to imply that when any suable party was attempting to build such a viaduct, an injunction might not lie. Earlier I endeavored to show that it could not be the case that Sec. 22, Art. I, was intended necessarily to give the same remedies for a "damage" as for a "taking," because in case a "taking" was threatened, the courts invariably issued the injunction, there existing a virtual right to demand it, whereas in the case of a consequential damage the courts frequently required the property owner to pursue legal remedies. These were all cases of suable parties. The Stockdale Case is simply one case where the court granted the injunction. I surmise that if for good reasons it had not granted the injunction, this court would not have disturbed such ruling. How, then, may the Stockdale Case be said to be a precedent for a right, by injunction, to compel a nonsuable party, i. e., the State or its agency or the representatives of the agency, lawfully proceeding on state business, to submit themselves to suit and judgment? This is not clear to me nor is it clear how, if we held as I contend for, we would be "directly overruling the principle laid down in the Stockdale Case." We would be overruling the dicta, but we would not be affecting the principle that a *suable* party exercising the power of eminent domain might by injunction first be compelled to have ascertained the issue of claimed consequential damages and the amount thereof. So much for the Stockdale Case. *Dooly Block* v. *Rapid Transit Co.*, 9 Utah 31, 33 P. 229, exemplifies this principle and nothing more. The State or its agencies lawfully acting were not involved.

I have at some length attempted to uncover the vulnerability of the situation upon which the court's decision is built and in so doing I think it sufficiently appears what I deem to be the correct principles applicable to this case.

It remains briefly to apply those principles concretely to this case. The complaint for an injunction reveals that the plaintiffs (defendants here) may suffer some inconvenience in coming in or out of their property, but they still have ample means of ingress and egress. They also suffer some inconvenience, in that they must go somewhat round-about to travel over the viaduct on Center Street. That part of the remaining street between property line and the viaduct will dead-end on the east line of the Andreasen property, requiring persons coming out of said property to go west and turn over the viaduct to proceed east on Center Street; that those coming from the Daniels property will, in going west on Center Street, be compelled first to turn east and then over the viaduct to continue west on Center Street; that the parking space in front of the property of the four defendants will be narrowed by placing farther north on Center Street the tracks of the Salt Lake & Utah Railroad, because 38 feet of the 116¼-feet overall width of Center Street will be taken by the viaduct. But the north line of the right of way of the Salt Lake & Utah Railroad will be 29 feet from the south line of the defendants' property; their property lying on the north side of Center Street. From the distance of the viaduct from the south line of defendants' properties, it would appear that their air and light are not interfered with to such an extent as to make it a "taking." From the allegations, it appears that while the enjoyment of their properties may be somewhat interfered with, it is not of such seriousness as to amount to a "taking." It seems to me that the damages, if any, are therefore consequential, resulting only in a depreciation in value, and must be obtained by the ordinary course of recovering against the State, because, as appears from the complaint in the injunction suit, the situation is not such as to throw the case into the class of a taking which would require the Road Commissioners to pay or arrange for compensation as a condition for exercising their authority. A person suffering personal injuries by reason of the negli-

gence of a state employe acting within the scope of his authority is compelled to resort to the Board of Examiners for redress against the State. I see no reason why a person suffering from consequential damages to his property caused incidental to authorized work on behalf of the State should not equally be compelled to resort to said Board unless indeed it is held that Sec. 22, Art. 1, by implication gives a right of action against the State. But, as heretofore shown, consent of the State to be sued must be express. Moreover, if the court's opinion rests on an implied consent, granted by this section of the Constitution, the decision that the Road Commission cannot be sued or enjoined but only the individuals composing it, does not track with the premise on which it is supposedly based.

It may be argued that the interference with or inconvenience to the easements which are attendant on the abutting owner's property may be said to be a "taking" in that part of their incorporeal rights are gone, and in that respect a distinction made between this case and those where there is a depreciation of property purely because rendered less enjoyable by cinders, dust, noise, etc. I do not intend to go into the question of these distinctions. If in reality any property of the landowners is actually taken, the results of the decision may be correct. I am concerned with the principles of law laid down in the opinion. They may affect any improvement carried on by the Road Commission, the Fish and Game Department, or any other agency, department, bureau, commission, or institution of the State. The building of a new penitentiary on property acquired by the State may immediately set in motion numerous claims of threatened consequential damage. Under the court's opinion, since the remedies for consequential damage are by Sec. 22, Art. 1, the same as those attendant on a "taking," a plaintiff could insist on injunction until all the claims for consequential damages were heard and settled. It thus becomes very important to see what legal principles are really applicable.

As before stated, the test of whether a state officer can claim immunity from suit depends upon whether his acts are authorized by law. If they are authorized by law, then he can no more be sued or enjoined than can the agency of the State, which he in his official capacity represents. If he is acting without authority of law, he can be enjoined because he then does not represent the State or any of its unsuable agencies, for no official represents the State in the execution of acts not authorized.

The Fifth Amendment of the Federal Constitution does not include the word "damaged" but only the word "taken." The following cases are of value in the matter of distinguishing a "taking" from a consequential damage: *Benner* v. *Atlantic Dredging Co.*, 134 N. Y. 156, 31 N. E. 328, 17 L. R. A. 220, 30 Am. St. Rep. 649; *Scranton* v. *Wheeler*, 179 U. S. 141, 21 S. Ct. 48, 52, 45 L. Ed. 126; *Gibson* v. *United States*, 166 U. W. 269, 17 S. Ct. 578, 579, 41 L. Ed. 996; *United States* v. *Cress*, 243 U. S. 316, 37 S. Ct. 380, 61 L. Ed. 746; *Sharp* v. *United States*, 191 U. S. 341, 24 S. Ct. 114, 48 L. Ed. 211; *United States* v. *Grizzard*, 219 U. S. 180, 31 S. Ct. 162, 55 L. Ed. 165; *United States* v. *Welch*, 217 U. S. 33, 30 S. Ct. 527, 54 L. Ed. 787; *Transportation Co.* v. *Chicago*, 99 U. S. 635, 25 L. Ed. 336.

On the side of the line where acts done in pursuance of an authorized objective are not authorized, are all those cases which involve an actual taking of property. The State Road Commissioners do not act within their authorization when they attempt to build a road over my property without acquiring it or arranging for compensation. But, ordinarily, when they do not physically take any property, but only improve or build on the State's own highway, which is one of the purposes of their existence, they act within their authority, and any consequential damage which may incidentally occur or be caused by such acts does not divest them of authority. It is true that they may in some cases so raise a grade or build a viaduct or do some other act on the State's highway which, while not actually intruding on

the property of another may cause such a serious interference with the enjoyment of that abutting property as to amount to a "taking." See the language in *Spencer* v. *Point Pleasant & Ohio R. Co.*, 23 W. Va. 406, above quoted.

Thus it is true that in the transition from consequential damages to damages from actual trespass there may come a point before actual trespass where practically the entire usefulness of a building or lot is destroyed, as where a street is raised to a point practically contiguous to the upper window of a home. This has, as said before, caused the courts in the old cases where municipalities and public service corporations have used the streets to call a substantial injury to property a "taking" within the meaning of the condemnation statutes.

In the case of *Moore* v. *City of Atlanta*, 70 Ga. 611, it was held that the grading of a street should not be stopped and extensive municipal improvements be prevented by injunction, because of damage which would result to the owner of a lot bordering on the street. The court further said, *"There is a broad distinction between cases of this character and those in which possession of, and dominion over, private property is taken for public use."* It is this distinction which we seek to recognize in determining the authority or lack of it by the road commissioners.

To sum up my conclusions: (1) Sec. 22, Art. I, of our Constitution, guarantees persons whose property is taken or damaged for public use just compensation, but there is no guarantee that compensation be first paid before the damage.

(2) The case of *Stockdale* v. *Rio Grande Western Ry. Co.*, 28 Utah 201, 77 P. 849, was a suit to restrain a suable party. And this case cannot be construed to hold that the claimant of consequential damages has an absolute right to an injunction against a suable party. It is still a matter of discretion. But when the work is being done by the

representatives of a state agency, acting within their authority, certainly the Stockdale Case is not applicable for an injunction suit in such case is in reality a suit against the State.

(3) Whether the Road Commissioners were suable depends upon whether they were in fact acting lawfully for a state agency authorized to do the work the Road Commissioners were doing.

(4) The Road Commissioners were not acting outside of their authority when they, by constructing the viaduct on the state highway, caused consequential injuries to abutting owners as described in the complaint for an injunction.

(5) The Road Commission is subject to the due process clauses of both Federal and our State Constitutions, but if the use is a public one the fact that proprietors whose property is "damaged" consequential to an improvement of the highway by the Road Commission, as distinguished from a "taking," are compelled to go to the Board of Examiners for inquiry and ascertainment of the damage instead of a court, does not withdraw from such proprietors the protection of due process.

(6) The pleadings in the injunction suit, showing that the Road Commissioners were damaging the defendants herein consequentially only in the lawful pursuit of their work, themselves revealed the lack of jurisdiction by the court to entertain the injunction suit against the Road Commission or the Road Commissioners. Consequently, the writ of prohibition should be made permanent.

HANSON, Justice (dissenting).

I concur in the dissenting opinion of Mr. Justice Wolfe.