349 P.2d 157

**SPRINGVILLE BANKING CO., Plaintiff and Appellant,**

v.

**C. Taylor BURTON et al., Defendants and Respondents.**

**No. 9066.**

Supreme Court of Utah.

Feb. 1, 1960.

Fabian, Clendenin, Mabey, Billings & Stoddard, Bryce E. Roe, Salt Lake City, for appellant.

Walter L. Budge, Atty. Gen., Franklyn B. Matheson, Asst. Atty. Gen., for respondents.

HENRIOD, Justice.

Appeal from a dismissal of plaintiff's mandamus action which sought to require members of the State Road Commission to initiate eminent domain proceedings to assess damages allegedly caused by impairment of ingress to and egress from plaintiff's property. Affirmed. Costs to defendants.

Plaintiff owns a lot and building on the East side of Main Street at Seventh South in Springville, Utah. Main Street is a segment of a transcontinental highway. It runs North-South. The Commission placed

a concrete island in the middle of Main Street, eliminating U-turns and left turns, and denying access of southbound Main Street traffic to plaintiff's property. The official project map indicates, however, that a new diversion highway permits southbound traffic seeking plaintiff's property to travel about 1400–1500 feet further than it was wont to do before.

Plaintiff seeks no removal of the island, but damages for interference with access to the property. It claims "damage" for which it urges compensation should be paid under Constitutional provisions.[1] This amounts to an asserted constitutional right to be damaged.

Plaintiff concedes that in cases like this the State cannot be sued for lack of consent;[2] that an action will not lie against the Road Commission;[3] and that damages are not assessable against the Commission members individually.[4] It is further conceded that the Commission acted reasonably, plaintiff alleging in its complaint that:

"The impeding of plaintiff's ingress and egress was determined by the defendants to be necessary for the proper and skillful construction of a highway for the use of the public, and the highway was skillfully and properly constructed."

This concession that there was no unreasonable exercise of the police power provokes two questions: 1) Can plaintiff, employing the extraordinary writ of mandamus, compel the state to pay damages, when, because of sovereign immunity, it could not have done so in a direct suit against the State or the Road Commission? and 2) Was the damage here compensable in any event?

■ As to 1): We believe and hold that the procedure chosen by plaintiff was an effort indirectly to do that which repeatedly we have held could not be done directly, which is dispositive of this case on that ground.

■■ As to 2): In this area of the freeway, citizens must yield to the common weal, albeit injury to their property may result. We espouse the notion that if the

---

1. Art. I, Sec. 22, Utah Constitution: "Private property shall not be taken or damaged for public use without just compensation."
2. Wilkinson v. State, 1913, 42 Utah 483, 134 P. 626; State by State Road Commission v. District Court, Fourth Judicial Dist., 1937, 94 Utah 384, 78 P.2d 502; Campbell Bldg. Co. v. State Road Comm., 1937, 95 Utah 242, 70 P.2d 857; Bingham v. Board of Education, 1950, 118 Utah 582, 223 P.2d 432; Hjorth v. Whittenburg, 1952, 121 Utah 324, 241 P.2d 907; Lynch v. United States, 1934, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434; Cook v. United States, 5 Cir., 1940, 115 F.2d 463; United States v. Lee, 1882, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171; Dougherty v. Vidal, 1933, 37 N.M. 256, 21 P.2d 90; Vol. 63A Fed.Dig., United States, ☞125.
3. State by State Road Commission v. District Court, Fourth Judicial Dist., supra.
4. Hjorth v. Whittenburg, supra.

sovereign exercises its police power reasonably and for the good of all the people, when constructing highways, consequential damages such as those alleged here, are not compensable.[5] On the other hand, if public officials act arbitrarily and unreasonably, causing, for example, total destruction of the means to get in and out of one's property, without any reasonable justification for doing so in the public interest, in a manner that imposes a special burden on one not shared by the public generally,[6] principles of equity no doubt could be invoked to prevent threatened action of such character or to remove any instrumentality born of such conduct. Plaintiff did not allege or assert anything akin thereto.

The complaint makes it obvious no such case exists here. Access has not been denied. Interfered with, it is true, but in our opinion to no unreasonable extent. Southbound travelers seeking plaintiff's property have to travel but a quarter mile further to reach it. The island concededly was necessary and desirable for safety reasons and to effect traffic control. This case more nearly is akin to Robinett v. Price,[7] where we held a much more circuitous route gave rise to no claim for damages where one end of a road was closed.

If every abutter on a highway or street where proper authority reasonably has eliminated left or U-turns, could obtain damages incident to such eventuality, the result is obvious: Highways would remain unmarked because of the prohibitive cost involved in payment of damages to owners on both sides, or else they would be by-passed entirely as was the case in State by State Road Commission v. Rozzelle,[8] which accomplishment we approved. Highways would become increasingly more dangerous, what with the rapidly increased traffic that has evolved in the past years and which clearly will increase further. Thousands of miles of highway would be left with no traffic control. No city could afford the luxury of a one way street lest it was of that type in the inception. Exigencies of the times require a practical, sensible approach to the limited-access highway problem, with the general public good being the primary consideration in determining each case as it arises, every case being different.

We believe, conclude and hold that the plaintiff here had no cause of action by way of mandamus, and that any damage provable here must yield without compensation in view of the obvious and admitted neces-

5. Muse v. Mississippi State Highway Comm., 1958, 233 Miss. 694, 103 So.2d 839; Langley Shopping Center, Inc. v. State Roads Comm., 1957, 213 Md. 230, 131 A.2d 690.

6. 97 A.L.R. 192.
7. 1929, 74 Utah 512, 280 P. 736.
8. 1941, 101 Utah 464, 120 P.2d 276; see also 118 A.L.R. 921.

sity for dividing the subject highway in this case.

CROCKETT, C. J., and CALLISTER, J., concur.

McDONOUGH, J., concurs in the result.

WADE, Justice (concurring with the result).

I concur with the result reached in the prevailing opinion on the ground that plaintiff has failed to show any compensable damage to their property. I do not agree that if such damage were shown sovereign immunity is applicable to this case.

I disagree with appellant that if compensable damage were shown injunctive relief should be granted to force the state to bring a condemnation suit for I think the state consented to a direct suit by the appellant, if such showing were made, by Section 22 of Article I of our Constitution, which provides that *"(P)rivate property shall not be taken or damaged for public use without just compensation."* To hold otherwise in some cases allows the state to clearly violate the above constitutional provision; in others it causes a multiplicity of actions and creates no end of doubt and uncertainty. This conclusion is supported by the great weight of authority.

That section makes no distinction between property taken and property not taken but only damaged, nor does it prohibit either taking or damaging private property for public use, but it requires just compensation for either the taking or damaging of private property for public use. It is applicable to every case where the law of eminent domain could be exercised but is not limited to such cases. It requires just compensation where private property is taken or damaged to an actionable extent for public use. It is not limited to private persons, firms or corporations but applies to the State, the Legislature, and all Boards, Commissions, Governmental agencies and subdivisions thereof, and is wholly inconsistent with the doctrine of sovereign immunity from a suit to recover such just compensation. In discussing this problem it has been well said:

"* * * 'Immunity from suit' cannot avail in this instance, and if no statute exists, liability still exists, because as to this provision the Constitutions are self-executing.

"To hold otherwise would be to say that the Constitution itself gives a right which the Legislature may deny by failing or refusing to provide a remedy. Such a construction would indeed make the constitutional provision a *hollow mockery* instead of a safeguard for the rights of citizens.

"No court has ever applied the doctrine of immunity from suit to cases

like the one at bar, nor can they, for to do so would absolutely annul the provision." [1] (Emphasis ours.)

This conclusion is absolutely required by that section of our Constitution. It is clear, as we held in State by State Road Commission v. District Court, Fourth Judicial Dist.,[2] that the mere right of a party whose property has been taken to present his claim to the Board of Examiners [3] is not due process of law.

In the Fourth District Court case,[4] Judge Hoyt, in the prevailing opinion, said the State cannot be sued "without its consent and that consent is not ordinarily implied," but that there is at least one case which holds such consent is implied from a constitutional provision similar to Section 22, supra, and Mr. Justice Wolfe in dissenting in that case indicated that there was only one case [5] which has so held. The impression created by these statements that few cases have so held is erroneous for practically all of the cases dealing with this problem hold that by such provision the State consents to being sued for such compensation without any implementing statute.[6]

In Johnson v. City of Parkersburg, supra, 16 W.Va. 402, 422–423, the Supreme Court of West Virginia in holding that a constitutional provision similar to our Section 22, supra, is as effectual consent to being sued as an express statutory enactment would be, said:

"I have nowhere seen it contended that a clause of a Constitution, which declares that 'private property shall not be taken for public use without just compensation' requires legislation to put it in force. It has always been regarded as self executing. It is a limi-

---

1. Chick Springs Water Co. v. State Highway Department, 1931, 159 S.C. 481, 157 S.E. 842, 850.
2. State by State Road Commission v. District Court, Fourth Judicial Dist., 1938, 94 Utah 384, 396–398, 403–404, 78 P.2d 502, 507–508, 510–511.
3. Sections 63–6–11 to 13, U.C.A.1953.
4. State by State Road Commission v. District Court, Fourth Judicial Dist., 94 Utah 384, 398, 419, 78 P.2d 502, 508, 518.
5. Chick Springs Water Co. v. State Highway Department, 159 S.C. 481, 157 S.E. 842, supra, note 1.
6. See Johnson v. City of Parkersburg, 1880, 16 W.Va. 402, 422–423, 37 Am.Rep. 779, 785; Chick Springs Water Co. v. State Highway Dept., 1931, 159 S.C.

481, 157 S.E. 842; Great Northern R. Co. v. State, 1918, 102 Wash. 348, 173 P. 40, L.R.A.1918E, 987; Rose v. State, Cal.App., 94 P.2d 1058; Cal., 105 P.2d 302; 19 Cal.2d 713, 123 P.2d 505; Bacich v. Board of Control, 23 Cal.2d 343, 144 P.2d 818; Renninger v. State, 1950, 70 Idaho 170, 213 P.2d 911, 916; Tomasek v. State, 1952, 196 Or. 120, 248 P.2d 703; County of Mohave v. Chamberlin, 78 Ariz. 422, 281 P.2d 128; Swift & Co. v. City of Newport News, 1906, 105 Va. 108, 52 S.E. 821, 3 L.R.A.,N.S., 404; Gledhill v. State, 1932, 123 Neb. 726, 243 N.W. 909; Hickman v. Kansas City, 120 Mo. 110, 25 S.W. 225, 23 L.R.A. 658, 41 Am.St.Rep. 684; see also 18 Am.Jur. 1028, 29 C.J.S. Eminent Domain § 141, p. 984, and 20 A.L.R. 516.

tation, not only upon the rights of individuals and corporations, but also upon the legislatures of the states."

Chick Springs Water Co. v. State Highway Department, supra, 157 S.E. 842, 847, 848, is a leading case on this subject and the one quoted from above. It also holds that the State by such constitutional provision without implementing statute has consented to being sued. There the relocation of a state highway caused periodic flooding of plaintiff's land. In reversing the trial court's dismissal of the action on account of sovereign immunity, the Supreme Court of· South Carolina said:

"The authorities hold that the constitutional provision is self-executing.

" 'It is within the power of those who adopt a constitution to make some of its provisions self executing, with the object of putting it beyond the power of the Legislature to render such provision nugatory by refusing to pass laws to carry them into effect; and where the matter with which a given Section of the Constitution is divisible, one clause thereof may be self-executing and another clause or clauses may not be self-executing. Constitutional provisions are self-executing when there is a manifest intention that they should go into immediate effect and no ancillary legislation is necessary to the enjoy-

ment of a right given and the enforcement of a duty imposed.' 12 C.J. 729.

\*     \*     \*     \*     \*     \*

"From the above authorities it is indisputable that the constitutional provision quoted is self-executing, and, the Legislature having enacted no statute providing for the compensation guaranteed by the Constitution applicable to the facts of this case, an action at law will lie to recover such compensation."

The constitutional provision in this case like the United States Constitution only required just compensation for the taking without mentioning damaging of private property for public use.

In Great Northern R. Co. v. State, 102 Wash. 348, 173 P. 40, 42, L.R.A.1918E, 987, the Supreme Court of the State of Washington, in holding that a railroad company could recover in a direct suit against the State damages caused by the State in constructing a highway along a mountainside above the railroad tracks in dumping materials onto the tracks by blasting out a shelf on the mountainside for the highway above, said:

"In our opinion, the theory that property rights are ever to be sacrificed to public convenience or necessity without just compensation is fraught with danger, and should find no lodgment in American jurisprudence. If the acts

which cause the injury were done under and in consequence of the direction of the state, then the state is to be regarded as the superior, and responsible as such, although it does the work by contract and by the direction of its duly authorized officers. The plaintiff's complaint states a cause of action under article 1, § 16, of our Constitution, and the state's demurrer was properly overruled. * * *"

Likewise, in Rose v. State, 19 Cal.2d 713, 123 P.2d 505, 510, California has held that the State is liable in a direct action to recover damages to abutting landowners on a street for constructing a subway therein, saying:

"Since article I, section 14, therefore, is a restriction placed by the Constitution upon the State itself, and upon all of its agencies who derive from it their power of eminent domain, it cannot be said that the mere failure of the legislature to enact a statue allowing suit to be brought against the state entitled the state to disregard and violate that limitation. The logical inference is that said constitutional provision is intended to be self-enforcing."

In Renninger v. State, 70 Idaho 170, 213 P.2d 911, 916, the Idaho Supreme Court, in an action to recover compensation for flooding plaintiff's land caused by the construction of a bridge, in holding that the constitutional provision that private property shall not be taken until just compensation to be ascertained in a manner to be prescribed by law, has been paid is self-executing said:

"* * * This provision of the Constitution, therefore, waives the immunity of the State from suit, and if the State takes the property without condemning, the landowner, to give full force and effect to the provision of the Constitution as self-executing, must be entitled to sue therefor and such are the universal holdings of the courts * * * [Cit.] and State Road Department of Florida v. Tharp, 146 Fla. 745, 1 So.2d 868, clearly and tersely affirms appellants' position thus:

" ' * * * To deprive the citizen of his property by other than legal processes and depend on escape from the consequences under cover of the plea of nonsuability of the State is too anomalous and out of step with the spirit and letter of the law to claim protection under the Constitution.' [Cit.] * * *"

In Tomasek v. State, 196 Or. 120, 248 P.2d 703, 715, the Oregon Supreme Court, in an action to recover just compensation from the State for the construction of a bridge which caused the erosion of plaintiff's land, held that a constitutional pro-

vision that private property shall not be taken without just compensation constituted a waiver of immunity by the State from such action, saying:

"The constitution having created the absolute right in the owner of property as against the state, such provision carried with it a waiver of immunity on the part of the state to actions prosecuted for damages for its violation."

And in County of Mohave v. Chamberlin, 78. Ariz. 422, 281 P.2d 128, 133, the Supreme Court of Arizona, in an inverse eminent domain action against the county to recover compensation for damaging plaintiff's land by flowing sewage onto it, reversed a previous dictum statement and held that a constitutional provision similar to our section 22, supra, is self-executing, saying:

"As a predicate for the dictum statement set forth, supra, * * * is not self-executing but requires legislative enactment to implement it. The overwhelming majority of courts to which such a question has been presented do not agree with this holding. [Cit.] * * * As the Supreme Court of California so well stated in the Rose case [105 P.2d 310]:

" '* * * The legislature by statutory enactment may not abrogate or deny a right granted by the Constitution. [Cit.] And it follows as a logical conclusion that a right constitutionally granted cannot be taken away by the failure of the legislature to act.

" 'As stated in the case of State v. Fletcher, 168 Okl. 538, 34 P.2d 595, the constitutional provisions in question * * * were specifically enacted to protect and preserve the individual rights of the subjects of the sovereign. Certainly, in the absence of provision in the section itself, the framers of the Constitution did not intend to grant a right which the legislature by its refusal or neglect to enact proper remedial machinery therefor might take away or deny.' "

Almost every court which has directly decided this question has held that by such constitutional provision the State waives its sovereign immunity from such suit and consents to being sued for such just compensation. Although in the Fourth District Court case, supra, the prevailing opinion intimates and the dissenting opinion expressly says that "Consent of the State to be sued cannot be implied," neither that case nor the Wilkinson v. State [7] case, nor the cases in the annotation in 42 A.L.R. 1464 hold that in a case of this kind the State has not consented to being sued. The Wilkinson case and the cases in the annota-

---

7. Wilkinson v. State, 42 Utah 483, 134 P. 626.

tion are dealing with sovereign immunity generally and not with this specific problem. The cases which expressly hold that under the conditions here presented the State has not consented to be sued are conspicuous for their scarcity. One is Hunt-Forbes Const. Co. v. Robinson, cited by Mr. Justice Wolfe to that effect, and Norwood v. Kentucky Confederate Home.[8] These cases lost most of their force as authority for that proposition when a later case by the same court, Kentucky State Park Comm. v. Wilder,[9] distinguished them from the case at hand, holding that by a constitutional provision similar to our section 22, supra, the State consented that the State Park Commission, which is similar to our State Road Commission, could be sued to recover just compensation for lands taken for public use even though under those cases the Commonwealth itself could not.

In the Fourth District Court case, supra, we partially recognized that the State has consented to this kind of a suit. There we approved the enjoining of the contractor and the individual members of the State Road Commission from proceeding with the construction of a viaduct on a public highway in order to coerce the State into paying just compensation to the adjoining landowners for the damages caused to their property by such construction, but refused to enjoin the State Road Commission as such because injunctive relief afforded the adjoining landowners an adequate remedy. In that case, 94 Utah 384, 397, 78 P.2d 502, 508, we said:

"We think it clear that the framers of the Constitution did not intend to give the rights granted by section 22, and then leave the citizen powerless to enforce such rights * * *."

Continuing on this question at pages 398–399 of the Utah Reporter and 508–509 of the Pacific Reporter, we said:

"The State Road Commission is, * * * an agency of the State, and suit against it is suit against the State. Suit against the State cannot be maintained without its consent, and that consent is not ordinarily implied. It may be argued that by adopting the provisions of section 22 of article 1 of the Constitution, the State has impliedly granted consent to be sued in the case of a taking or damaging of private property for state use without compensation. Such a rule has been declared in at least one jurisdiction, [cit] * * *.

* &ast; &ast; &ast; &ast; &ast;

"We think if a case arises where there is no other method of enforcing a

---

8. Hunt-Forbes Const. Co. v. Robinson, 1928, 227 Ky. 138, 12 S.W.2d 303, 304; Norwood v. Kentucky Confederate Home, 172 Ky. 300, 189 S.W. 225.

9. Kentucky State Park Comm. v. Wilder, 1935, 260 Ky. 190, 84 S.W.2d 38.

constitutional right except by suit against the State, then it must be considered that the State has given its consent to be sued in such a case. In this case, however, we hold that the Road Commissioners individually may be enjoined from proceeding in a manner forbidden by the Constitution—and that it is therefore unnecessary to permit suit against the State * * *."

In two previous cases [10] we enjoined a railroad company from operating its line without arranging to pay just compensation for the damages caused thereby to adjoining lands under circumstances somewhat similar to those in the Fourth District Court case, although a railroad never has sovereign immunity from a direct suit for such damages. So, under those decisions it was unnecessary that the state be immune from a direct suit in order to justify injunctive relief in the Fourth District Court case. There is much force to Mr. Justice Wolfe's contention in his dissenting opinion that the effect of that decision was a denial of the state's right of sovereign immunity from that suit. For, although the prevailing opinion pretended to allow the injunction only against the contractor and the individual commissioners, the only purpose or effect thereof was to coerce the state to settle by suit or otherwise the adjoining landowners' claims for damages or to abandon the contemplated improvement. The individual commissioners, as such, never proposed, threatened or intended to do anything contrary to the injunction granted. Everything which they proposed to do in connection with the property involved in that action was only as officers or agents of the State and not as individuals and the State can act only through its officers and agents. To claim, under such circumstances, that only the individual commissioners were being enjoined but the state was not is to substitute pretense and subterfuge for reality.

This contention is strengthened by our holding in the Hjorth v. Whittenburg case,[11] where the adjoining landowners recovered a personal judgment against the individual commissioners for the damages to their land caused by a change in the grade of the highway. On appeal we reversed that judgment holding that the individual commissioners were not liable for such damages personally. Thus, we refused to allow a personal judgment against the commissioners as individuals which would affect their own personal rights and liabilities. Both the Hjorth case and the Fourth Judicial District Court case indicated that the doctrine of sovereign immunity prevented a direct suit against the state for

10. Stockdale v. Rio Grande Western Ry. Co., 28 Utah 201, 77 P. 849; Dooley Block, Inc., v. Salt Lake Rapid Transit Co., 9 Utah 31, 33 P. 229, 24 L.R.A. 610.

11. Hjorth v. Whittenburg, 121 Utah 324, 241 P.2d 907.

such damages, but that question was not before the court in either case, and its decision was unnecessary to support either judgment. In the Hjorth case we decided only the liability of the individual commissioners, and in the Fourth District Court no question of a direct suit for damages against the state was involved, and the real effect of that decision was to allow the state to be sued and enjoined from making the improvement without compensation in that action.

The holding in the Fourth District Court case that the state has consented to being sued directly for just compensation only when injunctive relief is not available to enforce this constitutional provision is unsound. The state is immune from suit without its consent regardless of the hardship such immunity may cause. If the state has impliedly consented to being sued to prevent the taking or damaging of private property for public use without just compensation, why should we imply such consent to a direct suit for the recovery of such compensation only when no extraordinary remedy which will cause a multiplicity of actions is available? Conceding that the state might so limit such consent, there is nothing in this case which indicates that such was the intention. Injunctive relief is usually granted only when there is no other plain, speedy and adequate remedy, but under this holding all that is reversed, and we allow a direct suit only when injunctive relief is unavailable.

Most jurisdictions have eminent domain statutes authorizing the condemnation of and payment for private property taken for public use.[12] The Federal Constitution,[13] like most early state constitutions, prohibits the taking, but not the damaging of private property for public use without just compensation. Under such early provisions there was little occasion for the actual taking of private property for public use without first agreeing on the amount of just compensation to be paid or having such amount fixed in a condemnation procedure. As the country developed and the amount of consequential damages to private property for public use became more pronounced, many states enacted constitutional provisions similar to our section 22, which prohibits both the taking and the damaging of private property for public use without just compensation. Probably the first state to adopt such a provision was Illinois in 1870,[14] which has been followed by many other states, including our own. Under the early provisions which require an actual taking, there was little occasion to sue the state to recover for property taken. However, under the new provisions, where con-

12. See Title 78, Chapter 34, U.C.A.1953.
13. See Fifth Amendment to the Constitution of the United States.
14. See 18 Am.Jur. 753, "Eminent Domain" section 129.

sequential damages could be inflicted without an actual taking of or trespassing on private property, the occasion for suit to recover such damages became much more frequent, and the question of whether the state by adopting such constitutional provision had impliedly consented to be sued for the recovery of just compensation was much more often presented to the courts.

Many jurisdictions have general statutes authorizing suits against the state or some boards, commission or other governmental agencies or subdivisions. For instance, there is a federal statute [15] which provides:

"Section 41. The district courts shall have original jurisdiction as follows:

\* \* \* \* \* \*

"Twentieth. Concurrent with the Court of Claims, of all claims not exceeding $10,000 founded upon the Constitution of the United States \* \* \*."

In Jacobs v. United States,[16] where intermittent overflowing of land resulting from the construction of a dam by the United States was held in a direct suit against the United States to be a partial taking of the adjoining property, which required just compensation, Chief Justice Hughes in so holding for the court, said:

"\* \* \* The suits were based on the right to recover just compensation for property taken by the United States for public use in the exercise of its power of eminent domain. That right was guaranteed by the Constitution. The fact that condemnation proceedings were not instituted and that the right was asserted in suits by the owners did not change the essential nature of the claim. · The form of the remedy did not qualify the right. It rested upon the Fifth Amendment. Statutory recognition was not necessary. A promise to pay was not necessary. Such a promise was implied because of the duty to pay imposed by the amendment. The suits were thus founded upon the Constitution of the United States. 28 U.S.C. § 41(20), 28 U.S. C.A. § 41(20)."

A somewhat similar situation exists with respect to suits against cities in this state. By section 10-7-1, U.C.A.1953,[17] cities and towns "may sue and be sued." Section 282, R.S.U.1898,[18] in effect provides that the owner of real property abutting a street

---

15. See U.S.C. Title 28, section 41(20), now 28 U.S.C.A. §§ 1346, 2401, 2402.

16. Jacobs v. United States, 1933, 290 U.S. 13, 54 S.Ct. 26, 27, 78 L.Ed. 142, 96 A.L.R. 1, 3.

17. Same as section 15-7-1, R.S.U.1933, and U.C.A.1943, C.L.U.1917, section 531,

and section 180, C.L.U.1907 and R.S.U. 1898.

18. Same section with slight amendments as section 10-8-89, U.C.A.1953, section 15-8-108, of U.C.A.1943 and U.R.S.1933 and section 700, C.L.U.1917, and section 282 R.S.U.1898 and U.C.L.1907.

which is damaged by a change in the grade in such street after valuable improvements have been made on such property, may recover such damage in a civil action brought for such purpose. We have repeatedly held that the owner of such damaged property may recover such damages in a direct suit for that purpose against the city.[19] However, in Webber v. Salt Lake City,[20] where the one year statute of limitations on liability created by statute had expired on such a claim for damages against the city before the suit was commenced, we held, "that this constitutional provision [section 22] is self-executing, and to make it available required no legislative aid. The right to recover consequential damages for injury to private property by reason of making public improvements therefore does not rest upon section 282, supra, but is based upon the provision quoted from section 22 of article 1 of our Constitution." No reliance in that case is placed on section 10–7–1, U.C.A.1953, so this seems to be a direct holding that by the adoption of section 22, supra, the state has impliedly consented that the city may be sued on a claim of this kind.

From the foregoing, the conclusion is inescapable that by the above constitutional provision the state has consented to be sued to recover just compensation for the taking or damaging of private property for public use.

Such a holding would not abrogate the doctrine of sovereign immunity in a proper case but would merely hold that by section 22, supra, of our Constitution the state has consented to being sued to recover just compensation for taking or damaging of private property for public use. Such compensation must result from or grow out of a public use of property, either the property taken or other property used for a public purpose, and such compensation can only be recovered for "actionable injury," and must not be too remote or merely speculative.[21] Thus the state is not required to compensate for damages from re-routing a highway and thereby diverting customers and business from a business establishment as we held in State by State Road Commission v. Rozzelle, supra, nor for loss of future profits anticipated under a contract for the future development of the property as we held in

19. See Richards v. Salt Lake City, 1916, 49 Utah 28, 161 P. 680; Kimball v. Salt Lake City, 1907, 32 Utah 253, 90 P. 395, 10 L.R.A.,N.S., 483, 125 Am.St.Rep. 859; Hempstead v. Salt Lake City, 32 Utah 261, 90 P. 397; Felt v. Salt Lake City, 1907, 32 Utah 275, 90 P. 402.

20. Webber v. Salt Lake City, 1911, 40 Utah 221, 224, 120 P. 503, 504, 37 L.R.A.,N.S., 1115.

21. State by State Road Commission v. District Court, Fourth Judicial Dist., 94 Utah 384, 401, 78 P.2d 502, 510; State by State Road Commission v. Rozzelle, 101 Utah 464, 468, 120 P.2d 276, 278; State v. Tedesco, 4 Utah 2d 31, 286 P.2d 785, 789; Campbell Bldg. Co. v. State Road Commission, 95 Utah 242, 252, 70 P.2d 857; Rose v. State, 19 Cal.2d 713, 123 P.2d 505, 520–522, and cases on that question therein cited.

State v. Tedesco, supra. Such public use must be one which the state is entitled to make, and it must be intentionally made by the duly constituted public officers and not be merely the result of negligent or other wrongful acts which create ordinary tort liability.[22] I think the foregoing rules preclude appellant's recovery.

The implied consent of the state to being sued to recover just compensation for taking or damaging private property for public use contemplates the most direct and efficient suit possible in the interest of a just, speedy and inexpensive determination of that question. A requirement that the appellant seek injunctive relief to coerce the state into instituting condemnation proceedings would leave them, when such suit for injunction was over, exactly where they would be if they were allowed to sue directly for such just compensation, for in either case they must plead and prove their claim, and the granting of injunctive relief will not bring them any nearer a determination of their rights to just compensation. If injunctive relief is their only remedy, it requires two suits to accomplish what a direct action to recover just compensation, if allowed, would accomplish. This causes additional expense to both the state and the claimants by requiring the prosecution or defense of an additional suit; it takes up the time of the courts and causes additional delay and time for litigation. Is

it reasonable to hold that the state, by implication, has consented to a direct suit to recover just compensation only where great hardship cannot be avoided by injunctive relief? In my opinion such a concept is wholly unreasonable and as previously pointed out, is contrary to the great weight of authority.

The only cases where the state will benefit from a holding that only in cases where injunctive relief will not prevent great hardship will consent to a direct suit be implied are cases where long drawn out litigation or the prospect thereof will cause the claimant to abandon his claim, and cases like the Hjorth case, where injunctive relief is not asked for until it is too late. In both of such cases the benefit to the state results from a denial to the claimant of the just compensation guaranteed to him by the Constitution. Certainly, courts should not lend support to such a situation.

What would constitute sufficient hardship if such rule were applied so that consent of the state to be sued for just compensation would be implied would be left entirely uncertain. A multiplicity of suits and uncertainty of the correct remedy often causes a denial of justice. Litigation at best is expensive and time consuming even to the winning party, and a procedure which requires a multiplicity of actions and creates doubt and uncertainty would be intolerable and should, if possible, be avoided. All of

22. Lund v. Salt Lake County, 58 Utah 546, 200 P. 510.

this could be avoided by a simple holding that the state has consented to be sued for just compensation whenever a taking or actionable damages is shown. I think such is the correct rule to be applied to this case.

HENRIOD, Justice., (Separately answering and commenting on the opinion of Mr. Justice Wade, supra).

The author of the main opinion has the following observations personally to make in answer to Mr. Justice WADE'S dissent, as to the sovereign immunity phase of this case, without burdening the main opinion therewith or expecting his colleagues to concur in what I consider necessary (with apology for its length) to present a view contrary to that of my learned colleague, Justice WADE.

Even the appellant in this case disagrees with Mr. Justice WADE, having conceded in its brief and argument that it could not sue the state because of sovereign immunity (citing Utah cases) and having resorted, therefore, to an attempted mandamus proceeding against individuals, not the state. Mr. Justice WADE'S opinion is a gratuity, therefore, and an opinion not shared by any of the parties hereto, or their counsel, and becomes a personal opinion that is no more than an unsolicited excrescence on this litigation.

The cases cited in the dissent and claimed to be authority for the proposition that *our* constitutional provision against taking or damaging property for public use without just compensation, Utah Constitution, art. I, Sec. 22, constitutes a consent on the part of the state to be sued, deal with constitutional provisions which in every case are quite dissimilar from our own. Furthermore, the authorities cited in footnote 6 do not stand for the dissent's startling assertion that "practically all of the cases dealing with this problem hold that by such provision [*Our* art. I, Sec. 22] the State consents to being sued for such compensation without any implementing statute."

As to the question of sovereign immunity, it will be observed that the writer of the dissent comes into this case entertaining a philosophy dedicated to the complete destruction of the doctrine of sovereign immunity. Dissenting in Bingham v. Board of Education, 1950, 118 Utah 582, at page 592, 223 P.2d 432, 438, he said:

"I am inclined to believe that the *entire doctrine* of sovereign immunity is inconsistent with justice and correct principles and on that ground I do not agree with the decision in the prevailing opinion."

Mr. Justice WADE says the conclusion that the state consents to be sued in cases like this is supported by the great weight of authority. This is an assertion whose accuracy I challenge emphatically. *All of the authorities* construing a constitutional provision like our art. I, Sec. 22 hold just the opposite, and are reflected not only in our

decisions but in those of sister states and by literally hundreds of federal cases.

Nowhere has Mr. Justice WADE cited one United States case that says the United States can be sued under the Fifth Amendment, yet *that amendment* (except for the words "or damaged") *is identical to art. I, Sec. 22 of our constitution*, i. e., " * * * nor shall private property be taken for public use, without just compensation." There are none that ever has said the Fifth Amendment was self-executing without implementing legislation, while hundreds say it is not, as can be discovered easily by going to Vol. 63A of the Federal Digest, and looking under United States, 125. There is absolutely no reason to construe our art. I, Sec. 22 any differently. If the Fifth Amendment were self-executing without implementation, why was it deemed necessary to enact the acts of Congress allowing suits against the government, such as the Tucker Act? And why has the Utah legislature enacted legislation permitting certain state agencies to be sued, such as the Road and Liquor Commissions, unless it has been assumed that the state enjoys sovereign immunity from suit in spite of art. I, Sec. 22?

The dissent says art. I, Sec. 22 "applies to the State * * * and is wholly inconsistent with the doctrine of sovereign immunity." It then quotes copiously from Chick Springs Water Co. v. State Highway Dept., 1931, 159 S.C. 481, 157 S.E. 842—a *case which we specifically have rejected,—* to support the contention that our art. I, Sec. 22 is self-executing and that the state has consented to be sued. We rejected that case in State by State Road Commission v. District Court, Fourth Judicial Dist., 1937, 94 Utah 384, 78 P.2d 502, a case seeking to enjoin the state. If art. I, Sec. 22 is not self-executing so as to enjoin the state, how can it be self-executing and constitute a consent on the part of the state to be sued for damages for a taking? Private property would be taken or damaged in either event. Any reference to the Chick Springs case or those cited therein seems to fly into the teeth of the case in which we rejected them. Furthermore, the dissent's implication that the Chick Springs case interprets a constitutional provision similar to ours is not only inaccurate but misleading. That case construed a constitutional provision that reads:

"Private property shall not be taken * * * for public use without just compensation being *first* made therefor." Const.S.C. art. 1, § 17.

The difference between this type of constitutional provision and our own could be the subject of endless debate, but there is a difference. With respect to the provision where compensation must be paid *first* and *before* the taking, Mr. Justice Wolfe in the Fourth District Court case quotes from competent authority (State v. Superior

Court, 167 Wash. 334, 9 P.2d 70) to explain the difference as follows:

"It being required to *first* pay compensation, the constitutional guaranty is not only that just compensation shall be paid—*which is noncommittal as to to the method of collecting it*—but that it shall be paid *before* the taking or damaging. Under such reasoning the condition of payment for damages before doing the work may be a condition to exercising the authority and, not having been done, the Road Commissioners would be acting without authority and *could be enjoined*."

Mr. Justice WADE further states that "practically all of the cases dealing with this problem hold that by such provision the State consents to being sued for such compensation without any implementing statute." To support that proposition, with which I disagree, he cites cases from various jurisdictions in footnote 6, every one of which construes a constitutional provision quite unlike ours.

The first case cited, Johnson v. City of Parkersburg, 1880, 16 W.Va. 402, 37 Am. Rep. 779, was relied on heavily in the Chick Springs case, *which we rejected*. It is no authority here for another reason. Its constitutional provision is quite different than ours. Art. III, Sec. 9 of the West Virginia Constitution provides that

"the compensation * * * shall be ascertained in such manner, as may be prescribed by general law; Provided, that *when required by either of the parties,* such *compensation shall be ascertained by an impartial jury* of twelve freeholders."

The dissimilarity is obvious and significant.

The next case cited is Great Northern R. Co. v. State, 1918, 102 Wash. 348, 173 P. 40, L.R.A.1918E, 987, upon which the Chick Springs case also heavily relied. The dissimilarity of constitutional provisions is apparent from the following Washington constitutional provision:

"Art. I, Sec. 16. No private property shall be taken or damaged for public or private use without just compensation having been *first* made, or *paid into court* for the owner * * * which compensation *shall be ascertained by a jury,* unless a jury be waived, *as in other civil cases in courts of record,* in the manner prescribed by law * *."

Furthermore, the California constitution *has expressly granted the right to sue and be sued*:

"Art. 20, Sec. 6. Suits may be brought against the State in such manner and in such courts *as shall be directed* by law."

Renninger v. State, 1950, 70 Idaho 170, 213 P.2d 911, is so heavily burdened with

the Chick Springs case and the others. we have rejected as to be no authority here. Besides, Idaho's constitutional provision is different:

"Art. I, Sec. 14. Private property may be taken for public use, but not until a just compensation, to be ascertained in the manner prescribed by law, shall be paid therefor."

The next case cited, Tomasek v. State, 1952, 196 Or. 120, 248 P.2d 703 is not in point. The constitutional provision there construed is quite different:

"Art. I, Sec. 18. Private property shall not be taken for public use * * * without just compensation; *nor except in the case of the state,* without such compensation *first assessed and tendered.*"

The next case cited, County of Mohave v. Chamberlin, 1955, 78 Ariz. 422, 281 P. 2d 128 falls into the same category of dissimilarity. The provision reads:

"Art. II, Sec. 17. No private property shall be taken or damaged for public or private use without just compensation *having been first made,* or *paid into court* for the owner * * * which compensation shall be *ascertained by a jury,* unless a jury be waived *as in other civil cases in courts of record* * * *."

The next case cited is Swift v. Newport News, 1906, 105 Va. 108, 52 S.E. 821, up-on which the Chick Springs case relied, has been rejected by us by rejection of the Chick Springs case.

The next case cited, Gledhill v. State, 1932, 123 Neb. 726, 243 N.W. 909 is not in point. It is an action based on specific legislative authorization. Furthermore, the Nebraska Constitution, art. V, Sec. 22, specifically provides that "*The state may sue and be sued,* and the legislature shall provide by law in what manner and in what courts suits shall be brought."

The next case cited, Hickman v. City of Kansas, 1893, 120 Mo. 110, 25 S.W. 225, 23 L.R.A. 658 is no authority here since it construes a constitutional provision quite dissimilar:

"Private property shall not be taken or damaged for public use without just compensation. Such compensation shall be *ascertained by a jury,* or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and *until the same shall be paid* to the owner * * * the property shall *not be disturbed* or the proprietary rights of the owner therein divested." Const.1875, art. 2, § 21.

It is more than clear that none of the cases cited can be cited as authority for the proposition that our constitutional provision authorizes suit against the state or waives the state's sovereign immunity, all

of them going much further than our provision and most of them providing for assessment of damages by a jury in a court of record. The seven quotations found in the dissent were taken from the cases in the footnote, and in not one instance has the opinion set forth the provisions of the constitution of the various states which are being construed by the language quoted. The impression is given that the cases cited construe constitutional provisions like ours. They do not, and after reading the dissimilar provisions set out above, is it justifiable to create such an impression without showing what provisions are being construed?

The dissent continues to create what I consider a wrong impression when it says that:

"The cases which expressly hold that under the conditions here presented the State has not consented to be sued are conspicuous for their scarcity. One is Hunt-Forbes Const. Co. v. Robinson, cited by Mr. Justice Wolfe to that effect, and Norwood v. Kentucky Confederate Home. These cases lost most of their force as authority for that proposition when a later case by the same court, Kentucky State Park Comm. v. Wilder. * * *"

As to the cases standing for the proposition that the sovereign does not consent to be sued under a constitutional provision that "private property shall not be taken or damaged for public use without just compensation" being conspicuous for their scarcity, one could spend many hours every day for many days reading cases that so hold. The Wilder case simply said that the problem was not before the court.

The dissent lifts out of context several excerpts from the Fourth District Court case and then refuses to accept the plain meaning of the language. The very language quoted contains the following:

" * * * Suit against the State cannot be maintained without its consent, and that consent is not ordinarily implied * * * ."

Another portion of the language quoted says:

"In this case * * * we hold that the Road Commissioners *individually* may be enjoined. * * *"

The only comfort that the dissent can get out of the Fourth District Court case is some pure, simple obiter to the effect that if a case should arise there might be justification for suing the state. But even that obiter does not say that art. I, Sec. 22, providing that "private property shall not be taken or damaged for public use without just compensation" has given, now gives or will give consent to be sued or that the state has waived, does waive or will waive sovereign immunity. It sim-

ply says that if a case arises where there is no other method of enforcing a constitutional right except by suit against the state, it would be considered that the state had consented to be sued. The very obiter upon which the dissent relies, by virtue of the decision in the case which prevents suit against the state, excludes art. I, Sec. 22 as one of the constitutional rights that might be enforced by suit against the state. There may be constitutional provisions that would call for a suit against the state, but that does not mean that art. I, Sec. 22 of the constitution allows for suit against the state. An example of what the author of the Fourth District Court case might have had in mind would be the enforcement of art. I, Sec. 21 of the constitution, where it is provided that

> "Neither slavery nor involuntary servitude * * * shall exist within this State."

I take it that if the state inducted persons into involuntary servitude and made slaves out of them, that some kind of an action could be taken against the state to correct such situation, if there were no agents who, by suit, could be forced to rectify the situation.

Mr. Justice WADE makes the startling statement that "The holding in the Fourth District Court case that *the state has consented to being sued directly for just compensation* only when injunctive relief is not available * * * is unsound." The court in that case *did not hold any such thing*. It simply observed by way of obiter, *and did not hold,* that there may be a case,—not necessarily under art. I, Sec. 22—where *a* constitutional right undefined might be enforced by suit against the state. The case *held* that the petitioner *could not sue the state,* but that its agents might be enjoined, and the statement of the dissent is an inaccurate reporting of the Fourth District Court case.

Why the dissent bothers to explain anything at such great length seems queer when in one fell swoop it would reverse State by State Road Commission v. District Court, Fourth Judicial Dist., Hjorth v. Whittenburg, and State v. Tedesco, and by implication, Campbell Bldg. Co. v. State and Wilkinson v. State, infra. The doctrine of stare decisis and the solemn pronouncements of this court stretching over a period of nearly half a century, and authored by such respected jurists as Justice Frick in the Wilkinson case, Judge Hoyt in the Fourth District Court case and Justice Folland in the Campbell case, not to mention the innumerable other jurists who have on many, many occasions said that the sovereign could not be sued under a constitutional provision that says "private property shall not be taken for public use without just compensation," should not be treated as lightly as Justice WADE treats them by seeking cases from

other jurisdictions to gather strange constitutional provisions which are strangely different than our own in order to construe a constitutional provision that already we have construed four or five times.

One of the most inaccurate portions of the dissent is that part which cites, discusses and quotes the case of Jacobs v. United States, 1933, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142. The language would have us believe that the Jacobs case was an authority for the proposition that a constitutional provision to the effect that "private property shall not be taken without just compensation" waives sovereign immunity and gives consent to sue the sovereign. This gives a most false impression. The Jacobs case was an *action brought under the Tucker Act* which actually is a congressional enactment designed to get around the doctrine of sovereign immunity and to permit suits against the government *only up to a certain amount,* after which sovereign immunity governs. The Tucker Act itself is a concession that the sovereign is immune from suit. *Nowhere in the Jacobs case can be found any pronouncement to the effect that the Fifth Amendment, which is exactly like our art. I, Sec. 22, waived any sovereign immunity or constituted a consent to be sued.* To use the Jacobs case to establish the theme of the dissent by lifting language out of context, creates a false impression.

If the author of the dissent would not only read the Jacobs case which was decided on November 6, 1933, but also a case decided by the same court just seven months later, Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434, decided on June 4, 1934, he could not possibly have cited the Jacobs case, and he would not have misconceived the interpretation placed on a constitutional provision like ours by the courts which construed the identical federal constitutional provision. The court in Lynch v. United States, 292 U.S. at page 580, 54 S.Ct. at page 844, speaking through the venerable Mr. Justice Brandeis, has this to say about the subject:

"Contracts between individuals or corporations are impaired within the meaning of the Constitution * * * whenever the right to enforce them by legal process is taken away or materially lessened. A different rule prevails in respect to contracts of sovereigns. Compare Principality of Monaco v. [State of] Mississippi, 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282, decided May 21, 1934. 'The contracts between a Nation and an individual are only binding on the conscience of the sovereign and have no pretensions to compulsive force. They confer no right of action independent of the sovereign will.' *The rule that the United States may not be sued without its consent is all-embracing* * * * *for*

*consent to sue the United States is a privilege accorded, not the grant of a property right protected by the Fifth Amendment.* The consent may be withdrawn, although given after much deliberation and for a pecuniary consideration. De Groot v. United States, 5 Wall. 419, 432, 18 L.Ed. 700 (and other cases) * * * The sovereign's immunity from suit exists *whatever* the *character of the proceeding or the source of the right sought to be enforced.* It applies alike to causes of action arising under acts of Congress * * * *and to those arising from some violation of rights conferred upon the citizen by the Constitution,* Schillinger v. United States, 155 U.S. 163, 166, 168, 15 S.Ct. 85, 39 L.Ed. 108 * * * For *immunity from suit is an attribute of sovereignty which may not be bartered away.*"

It is elementary that no one can sue the United States (under a provision identical to ours) for taking property for public use without just compensation, and the principle is so well established as to provoke no kind of debate. An eloquent historical review of the doctrine of sovereign immunity may be found in United States v. Lee, 1882, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171. As was said in Cook v. United States, 5 Cir., 115 F.2d 463, at page 464:

"It is well settled that the United States Government is not suable as of common right, and the party who sues it must bring his case within the authority of some act of Congress or the court cannot exercise jurisdiction over it. United States v. Clarke, 8 Pet. 436, 444, 8 L.Ed. 1001; Reid v. United States, 211 U.S. 529, 29 S.Ct. 171, 53 L.Ed. 313; United States v. Michel, 282 U.S. 656, 51 S.Ct. 284, 75 L.Ed. 598; Munro v. United States, 303 U.S. 36, 58 S.Ct. 421, 82 L.Ed. 633."

Literally hundreds of cases could be cited to support the pronouncements of Mr. Justice Brandeis in the Lynch case, but none, including the Jacobs case, can be cited to the contrary, so that Mr. Justice WADE'S statement that the cases are conspicuous for their scarcity is unfounded. Not only do the many federal cases support sovereign immunity, but a number of state cases do also, including New Mexico, Arkansas and Colorado. *New Mexico has constitutional provisions identical to ours,* reading that "Private property shall not be taken or damaged for public use without just compensation." Const. art. 2, § 20. In a learned opinion upholding sovereign immunity, Dougherty v. Vidal, 37 N.M. 256, 21 P.2d 90, 92, the New Mexico Supreme Court had this to say:

"Both legally and practically we consider the state's immunity from suit

too important a matter to be trifled with. '*A sovereign is exempt from suit, not because of any formal conception of obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends.*' Mr. Justice Holmes in Kawananakoa v. Polyblank, 205 U.S. 349, 27 S.Ct. 526, 527, 51 L.Ed. 834. The Legislature, not to mention the courts, should proceed slowly with caution in subjecting the state itself to the exigencies of litigation. Langford v. United States, [11 Otto 341] 101 U.S. 341, 25 L.Ed. 1010. * * *

" * * * The right of the state to sue in its own courts has always stood side by side with its right not to be sued. * * *

"The practical necessity back of these legal distinctions is too plain to require exposition. The state must be permitted generally to pursue its governing and business functions free from interference by its courts. * * *

" * * * The courts cannot act in a case like this without impairing or destroying the salutary immunity from suit. The Legislature can act in the particular case or by general provision, and with proper regard for the public interest. The Legislature is no doubt as sensitive to injustice as the courts."

Another state that has a constitutional provision identical to ours, except for the word "appropriated," is Arkansas. Art. II, Sec. 22 of the Arkansas Constitution reads:

" * * * private property shall not be taken, appropriated or damaged for public use, without just compensation."

This is what the Arkansas Supreme Court had to say, in Arkansas State Highway Commission v. Partain, 1936, 192 Ark. 127, 90 S.W.2d 968, 970:

"The property owner has no cause of action which may be maintained to recover his damages against the state * * * If he permits an agency of the state * * * to appropriate his property, he is limited to such relief as the state may provide. *For the loss of his property, or for damage to it, which he sustains, this act gives him an unliquidated demand against the state, to be satisfied at the pleasure of the state.*"

Another state, Pennsylvania, has a constitutional provision, Art. I, Sec. 10, P.S., which reads as follows:

" * * * nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured."

124

This constitutional provision, substantially similar, has been construed as not waiving sovereign immunity and as not implying a consent that the state be sued, in Westmoreland Chemical & Color Co. v. Public Service Commission, 1928, 294 Pa. 451, 144 A. 407.

In Chumbley v. State, 1946, 183 Tenn. 467, 192 S.W.2d 1007, the Supreme Court of Tennessee held that an action would not lie against the state unless the exact procedure provided for by the legislature in permitting suit were followed, even where permission was given to sue the state, thus adhering to the doctrine of sovereign immunity.

It is thus apparent that the statement that the cases upholding sovereign immunity are conspicuous by their scarcity, as stated by Mr. Justice WADE, is without foundation and would be more apropos if directed to the cases cited in support of the opinion of Justice WADE.

Aside from the numerous cases from other states and the federal courts, for a half century this court consistently has assumed and held that the State of Utah enjoys sovereign immunity, and cannot be sued without its express consent. No clearer enunciation of this doctrine could be expressed than was done by Justice Frick in Wilkinson v. State, 1913, 42 Utah 483, 134 P. 626, 630, where an attempt was made to sue the state for damages arising out of flood waters occasioned by the alleged negligent construction of a dam by state agents, when he said:

"We have neither a statute *nor a constitutional provision authorizing a suit against the state.* * * * The action therefore was in fact against the state * * * and in the absence of either express constitutional or statutory authority an action against a sovereign state cannot be maintained. The doctrine is elementary and of universal application, and so far as we are aware there is not a single authority to the contrary."

At the time of the Wilkinson case, which is identical to the Chick Springs case, upon which the dissent relies, art. I, Sec. 22 of our constitution was in full force and effect and there for all to gaze upon, and yet no one dreamed that Sec. 22 gave consent to sue the state.

In State by State Road Commission v. District Court, Fourth Judicial Dist., we held that the Road Commission, ergo the state, could not be sued in an action to prevent it from damaging private property for public use. We emphatically said:

"The State cannot be sued unless it has given its consent or has waived its immunity."

The court recognized that art. I, Sec. 22 guaranteed that private property was not to be taken or damaged for public use without just compensation, but held that the

guaranty was not given by a suit against the state, but only against individuals who could be enjoined from damaging the property.

In Campbell Bldg. Co. v. State Road Commission, 1938, 95 Utah 242, at pages 249 and 252, 70 P.2d 857, at page 861, the doctrine of sovereign immunity was not questioned, but was reaffirmed by this court speaking through Mr. Justice Folland, who said:

> "This action may not be maintained unless the state has, through legislative or constitutional action, given consent to be sued," and

> "When there is statutory consent to sue, the statute is the measure of the power to sue."

Mr. Justice Folland further quoted with approval the following language at page 253 of 95 Utah, at page 862 of 70 P.2d:

> "The state when making a contract with an individual is liable *(though not suable without its consent)* for a breach of its agreement in like manner as an individual contractor. *While it may refuse to respond in damages and leave a claimant without any remedy, as it may refuse to pay its bonds, the obligation remains."*

Surely, if there is no express or implied consent on the part of the state to be sued on its solemn contracts, bonds and obligations, it would seem absurd to say that art. I, Sec. 22, which says not one word about consent or litigation, gives consent to be sued for damages for a taking for public purposes.

In Bingham v. Board of Education, 1950, 118 Utah 582, 223 P.2d 432, where a school board was sued, we reaffirmed the principle of sovereign immunity against torts. This decision was concurred in by Mr. Justice McDonough, but Mr. Justice Wade dissented, his language indicating clearly that he stands for the elimination of the doctrine of sovereign immunity in all cases, including torts.

In Hjorth v. Whittenburg, 1952, 121 Utah 324, 241 P.2d 907, we not only impliedly recognized the doctrine of sovereign immunity, but the plaintiffs also recognized it by not joining the state or the road commission. The thinking of this court for the last 50 years was expressed in Mr. Justice Crockett's statement at page 330, of 121 Utah, at page 909 of 241 P.2d that:

> "The argument of plaintiffs' counsel against the injustice to his clients of sovereign immunity is eloquent and persuasive. *The remedy is not to be found in imposing an unreasonable and arbitrary burden upon these public officials. This phase of our law is well established and of long standing. If it is to be changed, that must come through the sovereign power of this commonwealth, the people, speaking through the legislature."*

He then states that plaintiffs are not without a remedy, but may file their claims orderly and according to statutory procedure with the Board of Examiners, citing the Wilkinson case with approval.

Again, in State v. Tedesco, 1955, 4 Utah 2d 31, 286 P.2d 785, 789, we again held the state immune from suit saying:

"The defendant could not sue the sovereign for the damages claimed here, and the State's defense of sovereign immunity is well taken."

Mr. Justice Wade dissented, a gesture quite consistent with his contentions in the instant case.

The United States, since its creation, and the State of Utah, ever since its creation, have never permitted the government to be sued without its consent. This is true whether property is taken for a public use without just compensation or whether the government decides to renege on a contract or obligation. Sovereign immunity is so ingrained in our system of jurisprudence that no case can be found where the government of the United States or the State of Utah was allowed to be sued by implied consent or otherwise for a taking or damaging of property for public use without compensation. There is no distinction in principle as it relates to the United States or the State of Utah.

The italics are by the writer.